HAMITER, Justice.
 

 In this concursus proceeding, instituted by the Gulf Refining Company for the purpose of having judicially determined the ownership of the proceeds of 1/64 of the oil produced under its lease on a certain tract of land in Beauregard Parish, the landowner, J. B. Ferguson, Jr., is disputing the claims of numerous other persons whose rights flow from a mineral royalty reservation made by a Mrs. Edna Gibson, their author in title.
 

 The trial court, in sustaining a plea of ten years’ prescription liberandi causa directed by the landowner against that reservation, decreed Ferguson to be entitled to the proceeds; and from the judgment those opposing him appealed.
 

 On March 28, 1933, Mrs. Edna Gibson sold to A. J. Heflin and David Cole an undivided 5/6 interest in and to the land. The deed evidencing the sale contained the following reservation: “Said Mrs. Edna Gibson retains l/64th royalty in all oil, gas and mineral rights in the above described lands.” Some four months later Mrs. Gibson conveyed to Heflin and Cole the remaining 1/6 interest in the land, the act of sale making no mention of any mineral or royalty rights. By mesne conveyances from Heflin and' Cole, Ferguson, in the year 1940, became the owner of the entire tract.
 

 On August 14, 1933, Mrs. Gibson joined Heflin and Cole in granting to H. B. Corbett an oil, gas and mineral lease affecting the land, it being on the usual form and for the primary term of ten years. Under this lease, which it later acquired, the Gulf Refining Company obtained the oil production involved in this proceeding.
 

 On August 31, 1934, a few days subsequent to the anniversary date of the lease, Mrs. Gibson gave to Cole and Heflin an instrument (it was signed only by her) in which she first made reference to the granting of the mentioned lease and then declared :
 

 “Whereas, theretofore, by warranty deed dated March 28th, 1933 and recorded in Vol. 48, page 424, Conveyance Records of Beauregard Parish, Louisiana, the said Mrs. Edna Gibson had conveyed unto David Cole and Andrew J. Heflin her undivided five-sixths (5/6ths) interest in and to the North Half of the Southwest Quarter and the Southwest Quarter of the Southwest Quar
 
 *254
 
 ter (Ni/2 of SWI/4 and SW[4 of SWH) of Section 25, Township 3 South, Range 11 West, and Northeast Quarter of Southeast Quarter (NE]4 of SE}4) of Section 8, Township 4 South, Range 9 West, retaining only a one-sixty-fourth (l/64th) royalty right in the oil, gas and mineral rights in the said land; and
 

 “Whereas, the said Mrs. Edna Gibson now desires to waive and renounce her right to receive part of the money rentals that may be paid by the Gulf Refining Company of Louisiana or its assigns to extend the primary term of the said lease.
 

 “Now, therefore, I, Mrs. Edna Gibson, born Lacey, widow of Ira G. Gibson, of the Parish of Allen, State of Louisiana, in consideration of the premises and One and no/100 ($1.00) Dollar to me in hand paid by David Cole and Andrew J. Heflin, do hereby release, relinquish and quitclaim unto the said David Cole and Andrew J. Heflin, their heirs and assigns any and all interest that I may have, or that I may be entitled to, in the rental payments that may hereafter be made by the Gulf Refining Company of Louisiana, or its assigns, to extend the primary term of the above described lease as therein provided.
 

 “All royalty payments on oil, gas and any other minerals that may be produced under the terms of said lease shall be paid to the said Mrs. Edna Gibson, David Cole and Andrew J. Heflin as their interests may appear of record.”
 

 On January 28, 1939, Mrs. Gibson sold her reserved 1/64 mineral royalty to one Sam S. Hudson, and from him thereafter, by mesne conveyances, the appellants herein acquired that interest.
 

 Under its lease the Gulf Refining Company commenced drilling operations on May 4, 1943, and it completed the well as a producer of oil in paying quantities on August 19, 1943.
 

 In opposition to appellee’s plea of prescription of ten years, appellants contend first that the reservation by Mrs. Gibson in the sale to Heflin and Cole vested her with something in the nature of mineral rights, not merely a royalty interest; that as the owner thereof she was a necessary party to the lease granted to Corbett and later assigned to the Gulf Refining Company; and that when she executed it jointly with Cole and Heflin her rights were extended for the period of the existence of the lease which is still in full force and effect by reason of the production obtained thereunder. The argument of their counsel is that “when Mrs. Edna Gibson made a reservation of l/64th royalty right in the oil, gas and mineral rights and not just in the oil and gas produced and saved from the property, she thereby reserved a right to participate in any profit or income from such. rights whether such profit came from lease bonus, rental or the actual production of oil or gas.”
 

 Our interpretation of the reservation is that it vested Mrs. Gibson with
 
 *255
 
 •only the usual mineral royalty. If this had not been intended the word “royalty” would have been omitted from the instrument and instead the term “mineral interest” or “mineral rights” used. Moreover, the interest reserved here is practically the same as that reserved in Vincent et al. v. Bullock et al., 192 La. 1, 187 So. 35, 37, described therein .as “a one-sixteenth (l/16th) royalty of all the oil, gas and other minerals produced and saved from said premises * * *,” which we held to be only a mineral royalty reservation. And, furthermore, Mrs. Gibson herself construed the reservation as we do, for in the instrument given by her to Cole and Heflin on August 31, 1934, she declared that thereunder she had retained ■“only a l/64th royalty right in the oil, gas and mineral rights in the said land.” From which it follows that Mrs. Gibson, as well as those holding under her, had only the privilege of sharing in the minerals if and when produced. She did not possess the right of ingress or egress to the property for the purpose of exploration or the right of participation in the bonus or delay rentals to be paid for any lease on the land, and she was not a necessary party to the lease contract under which the Gulf Refining Company obtained production.
 

 It is a fact, of course, that she did join Cole and Heflin in the execution of that lease. Why she became a party to it is not disclosed by the record; perhaps her signature was requested and obtained by the lessee solely as a precautionary measure. However, her signing, as will hereinafter be shown, did not serve to give her rights under the lease additional to those which she would have enjoyed otherwise.
 

 Neither did her execution of the instrument of August 31, 1934, which is the basis of appellants’ second contention, furnish any new rights. Respecting this contention, counsel state:
 

 “Appellants submit that the execution of this instrument on August 31, 1934, by Mrs. Gibson, for a consideration paid by Cole and Heflin, had the effect of redefining the interest of Mrs. Gibson and changing it from a general royalty right to a royalty right under a specific lease, and that the rights thereafter would consist of the right to be paid the l/64th royalty under the terms of the specific lease previously entered into by and between Mrs. Gibson, Cole and Heflin of date August 14, 1933, and that a well having been commenced on said property and actually completed as a producer during the term of the lease, and the lease still being in full force and effect, that Mrs. Gibson and her successors, appellants, are entitled to be paid the royalty under this existing lease.”
 

 The instrument of August 31, 1934, was not an agreement of compromise or other contract recognizing Mrs. Gibson as the owner of, or vesting in her, specific rights in and to a particular lease. To the contrary, in our opinion, it purposed only to restrict her to the general royalty interest reserved when she sold the land. It amounted to nothing more than a solemn declara
 
 *256
 
 tion by Mrs. Gibson that by her signing the lease she acquired no rights in addition to those originally reserved; and the reason for her giving it, obviously, was to prevent a future interpretation of the lease such as is now contended for by appellants. Supporting this conclusion is the significant fact that the instrument was signed by Mrs. Gibson alone. Also, as shown above, therein she merely made reference to the lease and to her original reservation (declaring that she had retained only a 1/64 royalty interest) ; expressed a desire to waive and renounce her right to receive rentals under the lease; and then, in consideration of the premises and of $1 paid to her, released, relinquished and 'quitclaimed such right. Of course, she further declared that the royalty payments under the terms of the lease should be paid to her, Cole and Heflin “as their interests may appear of record”; but this could only mean that she would participate in production on the basis of her general royalty reservation.
 

 Qearly not applicable here are the several cases cited by appellants’ counsel that deal with the effect of signing a joint lease, principally among which is Mulhern v. Hayne et al., 171 La. 1003, 132 So. 659. The question in each pertains to the landowner’s joining with the holder of mineral rights (a servitude under our jurisprudence), not with the owner of a royalty interest.
 

 Nor does our decision in Brown et al. v. Sugar Creek Syndicate et al., 195 La. 865, 197 So. 583, lend support to counsel’s position that the instrument signed by Mrs. Gibson on August 31, 1934, gave her specific rights under the lease. True, in that case royalty rights were extended for the duration of the lease when the owners thereof joined with the landowner and with the holders of mineral rights in the execution of a unitization agreement. But the basis of the agreement was a compromise arrangement among all parties, entered into because of the existence of conflicting claims, under which many of them were compelled to surrender certain valuable rights. There is no. element of compromise in the instant case. By the declaration relied on, Mrs. Gibson merely made clear her intention with reference to her joining in the lease to Corbett, it being that she acquired no rights additional to those originally reserved.
 

 The judgment is affirmed.