of the car at issue and prayed that Adams be adjudged the owner.

 Adams filed a brief in this Court, arguing that he is the person who has been unjustly deprived of his property, that justice and equity demand that he be heard, and that the judgment of the trial court maintaining Lee's exceptions of no cause or right of action should be reversed. Obviously he overlooked the fact that he did not apply for, nor was he granted, a writ of certiorari by this Court; consequently, the phase of the case in which he is interested is not before us for review. See Speed v. Page, 222 La. 529, 62 So.2d 824, and authorities cited therein.

For the reasons assigned, the judgment of the Court of Appeal, Second Circuit, affirming the judgment of the District Court, is reinstated and made the final judgment of this Court; all costs incurred here to be paid by defendant Narvis J. Lee.

67 So.2d 93

SMITH v. HOLT et al.

No. 40972.

July 3, 1953.

Allison R. Kolb, Durrett & Hardin, C. C. Bird, Jr., Baton Rouge, for plaintiff-appellant.

Warren Hunt, Rayville, Sholars, Gunby & Guthrie, Oliver & Digby, Monroe, for defendants-appellees.

FOURNET, Chief Justice.

The plaintiff, Thomas W. Smith, who acquired the E½ of the SW¼ of the SW¼, Section 30, T. 17 N., R. 9 E., Richland Parish, which land was subject to a reservation of all the minerals made on October 28, 1939, by a former owner, defendant J. E. Holt, instituted this proceeding against Holt and those who acquired mineral and royalty interests through him, to be declared the owner of the mineral-rights and to have defendants disclaim title thereto because of the claimed expiration of the servitude through non-use for a period of ten years; and he is appealing from a judgment dismissing his suit.

According to the record, the defendant Holt, having previously acquired by mesne conveyance a forty-acre tract or a sixteenth section in Richland Parish (SW¼ of SW

¼, Section 30, T. 17 N., R. 9 E.), on October 28, 1939, sold the east half to A. J. Pitts, and on October 30, 1939, sold the west half to J. C. Pitts, excepting from those sales and reserving to himself all of the minerals in and under both tracts. The east half, following various transfers, was purchased by the plaintiff on August 16, 1947. Meanwhile, in 1944, Holt, as owner of the two mineral servitudes, had granted an oil, gas and mineral lease covering the whole forty acres to C. H. Murphy, Jr., who (on the same date) conveyed an undivided half interest in the lease to Sun Oil Company; Holt had also conveyed (September 11, 1945) an undivided two-thirds interest in his reserved mineral rights, subject to the lease to C. H. Murphy, Jr. and Sun Oil Company, to defendant C. H. Murphy, Sr.[1]

On May 31, 1945—just prior to the last-mentioned conveyance—the Department of Conservation, under authority of Act 157 of 1940, LSA–R.S. 30:1 et seq. (the oil and gas conservation law), following publication of notice and full hearing, had issued its Order 96, establishing drilling units of forty acres each for drilling to the Holt Zone and the May Sand in the area known as the Delhi Field, which includes the six-teenth section described above; the units so established were to be comprised of lands embraced within the outlines of a regular governmental one-sixteenth section, and not more than one well on each unit was to be allowed to produce from the Holt Zone and the May Sand. Pursuant to this Order the lessees, C. H. Murphy, Jr., and Sun Oil Company, obtained a permit from the Conservation Department to drill on the forty-acre tract composed of the SW¼ of SW¼, Section 30, T. 17 N., R. 9 E. A well drilled on the west half of the unit was completed as an oil producer in the Holt Zone on March 29, 1946, and has been continuously producing in allowable quantities to the present date. There has been no drilling on the east half, on which Holt, by his reservation of all minerals in the deed to A. J. Pitts, had created a mineral servitude.

Under the well settled law and jurisprudence of this State, unless prescription is suspended or interrupted, a mineral servitude becomes extinguished because of non-use for a period of ten years.

The defendants contend, however, that Sun Oil Co. and C. H. Murphy, Jr., as lessees from the mineral owner of the entire

1. The remaining defendants claim through Holt and C. H. Murphy, Sr., by acts of donation executed in 1947, conveying, on the part of Holt, fractional portions of his remaining one-third interest to Lewis Jackson Holt, Marylynn Duplissey Brown, Betty Roy Duplissey, and Edward H. Duplissey, Jr.; and on the part of Murphy, fractional portions of his undivided two-thirds interest in royalties under the lease to C. H. Murphy, Jr., and wife, Johnie Walker, Bertie M. Deming and husband, John W. Deming, Theodosia M. Nolan and husband, William C. Nolan, Caroline M. Keller and husband, Christoph Keller. All conveyances were duly recorded in Richland Parish.

tract under a single lease embracing the two servitudes, were the sole "Owner"—defined in Act 157 of 1940 as "the person who has the right to drill into and to produce from any pool, and to appropriate the production either for himself or others" (Sec. 2(h)); that a permit to drill having been obtained by them, the "owners" have in effect agreed "to pool their interests and to develop their lands as a drilling unit", Sec. 9(a), and no further order or proceeding was authorized; that having drilled a well capable of producing, and continuing to produce, oil or gas in paying quantities, the unit constituted a "developed area", Sec. 8(b), which had the effect of interrupting prescription as to the entire sixteenth section.

On the other hand, the plaintiff contends that the drilling and production on the west half of the sixteenth section did not interrupt prescription of the mineral servitude which had been reserved by Holt on the east half, and that ten year liberative prescription accrued and operated to extinguish that servitude on October 28, 1949. Counsel asserts that Order 96 of the Conservation Commission is nothing more than a general spacing order for the whole area and that its provisions, which follow the language of Section 9(a) of Act 157 of 1940, clearly show it was not intended to operate as a *pooling order* but merely laid the foundation for, and must be implemented by, a second order effecting a voluntary or a forced pooling of each particular unit. He denies that the permit to drill can be considered a formal pooling since it was issued ex parte, without notice and without hearing, and therefore claims that there was total lack of compliance with the requirements for voluntary or forced pooling contained in Section 9(a) of the Statute, the provisions of which are relied on as insuring due process of law and safeguarding a property holder in his inherent right to develop his own land as he sees fit. Counsel further contends that if the minerals under plaintiff's land were to be pooled with the minerals under an adjoining tract, the plaintiff was entitled to notice, since prescription cannot be extended by the sole action of the servitude owner, relying on the cases of Hightower v. Maritzky, 194 La. 998, 195 So. 518, Achee v. Caillouet, 197 La. 313, 1 So.2d 530, Baker v. Wilder, 204 La. 759, 16 So.2d 346, Placid Oil Co. v. George, 221 La. 200, 59 So.2d 120, and Arkansas Louisiana Gas Co. v. Thompson, 222 La. 868, 64 So.2d 202.

In order to properly determine these issues, we think it necessary to review and further analyze the conservation laws of this State from the viewpoint of their intended effect on individual and property rights. It has long been established that the State's police powers justify measures for the regulation of production of oil and gas, and for the conservation of these valuable deposits, Ohio Oil Co. v. State of Indiana, 177 U.S. 190, 20 S.Ct. 576, 44 L.Ed. 729, but the beginnings of legislative control in Louisiana were piecemeal, each law

giving recognition to some additional aspect of the importance of the industry to the State. The wasteful practices of early development brought about acknowledgment of the fact that it was in the public interest that maximum recovery of oil and gas be attained, as well as realization of the necessity for a sound public policy with reference to the conservation and production of these commodities, and caused the insertion in the Louisiana Constitution of 1921 of a new clause, creating the Department of Conservation under the control of a Commissioner and directing the Legislature to enact laws "necessary to protect, conserve and replenish the natural resources of the State, and to prohibit and prevent the waste or any wasteful use thereof." Art. 6, Sec. 1. Certain laws adopted pursuant to this constitutional mandate have for their purpose the conservation of our oil and gas resources for the protection of the public interest. In determining the rights of individuals, due regard must be given to these enactments as interpreted in the light of their purpose; contractual relations and property rights of persons must yield to a proper exercise of the police power, and it is on this principle that such laws are constitutionally valid. See Everett v. Phillips Petroleum Co., 218 La. 835, 51 So.2d 87, and cases cited therein.

Act 157 of 1940 (now LSA–R.S. 30:2–30:20) is a comprehensive statute on the subject of oil and gas conservation and its provisions have been considered by this Court on numerous occasions. A drilling unit as therein contemplated is "the maximum area which may be efficiently and economically drained by one well", Sec. 8(b). The voluntary or compulsory pooling of separately owned tracts within a drilling unit for the purpose of avoiding waste or preventing the unnecessary drilling of wells is provided, with the stipulation that "the owners thereof may validly agree to pool their interests and to develop their lands as a drilling unit", but where "such owners have not agreed to pool their interests, the Commissioner shall, if found by him to be necessary for the prevention of waste or to avoid the drilling of unnecessary wells, require such owners to do so and to develop their lands as a drilling unit." Orders requiring such pooling "shall be made after notice and hearing, and shall be upon terms and conditions that are just and reasonable, and will afford to the owner of each tract the opportunity to recover or receive his just and equitable share of the oil and gas in the pool * * *." Sec. 9(a).

It is clear from the above language that only in the case of forced pooling is an Order "requiring such pooling" necessary—the purpose being to insure the receipt by the owner of each tract of his just and equitable share of the minerals in the pool with respect to which the drilling unit is formed. The same equitable distribution may be accomplished by convention; and obviously, where there is a sole owner of a unit, a pooling or-

der can serve no useful purpose. Under the facts of this case, the lease was granted when Holt was owner of all the minerals under the forty-acre tract; his assignee of a two-thirds mineral interest acquired subject to the lease; so that upon establishment, by Order 96 of the Commissioner of Conservation, of forty-acre drilling units in the Delhi Field, each to be "comprised of the tract or tracts of land embraced within the outlines of a regular governmental one-sixteenth section," the lessees, Sun Oil Company and C. H. Murphy, Jr., alone could qualify as "owners," they being "the person who has the right to drill into and to produce from any pool, and to appropriate the production either for himself or for others." The plaintiff, having only a reversionary right to the mineral interest he now claims, would have been without interest to oppose a pooling order if one had been sought. Sanders v. Flowers, 218 La. 472, 49 So.2d 858. The authorities relied on by him in support of the proposition that a servitude cannot be extended by the sole act of the servitude owner are cases concerning conventional agreements and the effect thereof as constituting an acknowledgment sufficient to interrupt prescription or as determining the right to participate in mineral royalty payments—and are not controlling here from either a factual or a legal standpoint. It necessarily follows that to require the owners, Sun Oil Company and C. H. Murphy, Jr., to go through the procedure of obtaining an order would be a vain and use-

less act, neither favored in law nor contemplated by the statute.

For the reasons assigned, the judgment appealed from is affirmed.