FOURNET, Chief Justice.
Aaron H. Horn having acquired from S.W. McRae, Mr. and Mrs. Fred Humphrey, and Mrs. N. E. Sanders, by separate deeds in which the parties each reserved certain mineral interests, a 412-acre tract of land in Sections 4, 5, and 8, T. 12 N., R. 16 W., DeSoto Parish — being the same tract originally acquired by S. W. McRae from the Federal Land Bank of New Orleans on February 28, 1938, subject to a controversial mineral interest reserved by the bank, McRae having subsequently conveyed to Humphrey and Mrs. Sanders in separate deeds on May 12, 1938, an undivided % interest each therein • — availing himself of the provisions of the Uniform declaratory Judgments Act, R.S. 13:4231 to 13:4246, is seeking to have himself declared the owner of this property, together with an undivided 1IÍ6ths interest in the minerals thereunder, idee from the mineral lease granted the Skelly Oil Company by McRae, the Humphreys,. and Mrs. Sanders, with reservation of his right to sue for damages and for an accounting of the minerals produced from the acreage.
. The case is now before us on a second appeal-taken by the plaintiff from adverse *714 judgments,- we, in the former appeal, having remanded the case so that the Federal Land Bank, considered a necessary party, might be joined as a defendant. See, 221 La. 626, 60 So.2d 65. The bank in its answer has disclaimed any interest in the minerals or land involved.
The facts of the case, which must be stated in detail in order that the issues may be clearly understood, are that on February 28, 1938, the Federal Land Bank of New Orleans, the then .owner of the acreage in question, sold it to S. W. McRae for a consideration of $2,000 and 10 promissory notes of $200 each, secured by mortgage and vendor’s lien, which notes' were finally paid the latter part of 1943. In this deed is contained the following reservation that raises the pivotal controversial point in the case:
“There is excepted from this conveyance and reserved unto The Federal Land Bank of New Orleans a one-half mineral interest in and to all minerals and mineral rights in and under the above described property. It is provided, however, that the purchaser is hereby granted the privilege of leasing the minerals and mineral rights," including the said reserved interest, without joinder of -The Federal Land Bank of New Orleans on the following conditions, to-wit: (1) That any lease or leases so granted will provide that a one-half of 'the usual royalty of one-eighth of all minerals be paid direct to The Federal Land Bank of New Orleans. (2) That one-half of all bonuses and rentals and one-half of the remaining royalties accruing to the purchaser under any such leases granted will be and are hereby assigned to the said Bank .as long as the within Act of Sale and ■ Mortgage is in force and effect with the agreement that the Bank will, upon receipt of such income, apply the same in the manner in which special, payments are provided for therein. (3) That the remaining one-half of the bonuses ■ and rentals and the remaining one-half of the royalties will be paid direct to the purchaser. (4) That upon payment in full of the indebtedness secured by the within Act of Sale and Mortgage, all income ac- -, cruing under any mineral lease except one-half of the usual royalty of one-eighth of the minerals which is to be .. paid direct to The Federal Land Bank of New Orleans as hereinabove provided, shall be the property of the., purchaser.”
On May 12, 1938, McRae sold to Fred Humphrey and Mrs. N. E. Sanders, by separate but identical deeds, an undivided “one-fourth (^4) interest in and to all of the right, title and interest acquired” from the land bank, subject “to the terms and obligations” in the bank’s deed to McRae. On September 22, 1941, Humphrey sold to his then wife, Vivia Story Humphrey, a 14 *716 interest “in and to all of the right, title and interest” he acquired from McRae. McRae, the Humphreys, and Mrs. Sanders, in separate deeds, subsequently sold the property to the plaintiff, reserving mineral interests that are also controversial. McRae in conveying his half interest excepted an undivided Yz mineral interest “in and under said land.” Mrs. Sanders and the Humphreys in conveying their interests to Horn each reserved an undivided 54 mineral interest “in and under said land.” In addition, the Humphreys stipulated that in the event “the undivided one-half of the undivided one-fourth of the one-eighth royalty reserved and retained by the Federal Farm Land Bank of New Orleans, ever reverts, (it) shall revert to A. H. Horn, his heirs and assigns.”[1] By separate instruments on December 19, 1946, McRae, Mrs. Sanders, and Fred Humphrey (individually and as the legal guardian of his minor child, Frances Gill Humphrey) granted a mineral lease to the Skelly Oil Company for a combined consideration of $14,420. Mrs. Vivia Story Humphrey ratified the lease .on July 25, 1950. There was, however, no development on the property during the ten year period between February 28, 1938, and February 28, 1948, although in May of 1949 the Commissioner of Conservation included a portion of the acreage in a then producing unit known as the W. H. Nunley Lease Unit.
The plaintiff having made amicable demand that all of the defendants cancel this mineral lease in favor of Skelly from the public records (alleged to be slandering his title to the minerals) without avail, instituted this suit to have his title to the property and to 1?Í6ths of the minerals thereunder vindicated.
At the time McRae transferred á 54 °f whatever interest he had acquired from the land bank to Humphrey, Humphrey was married and the father of a minor child, Frances Gill Humphrey. His first wife died in 1940 and it is now conceded by all parties concerned that this child thereupon inherited his mother’s interest in the land and minerals — stated to be a Vsth. It is also conceded that Horn is the surface owner in indivisión with this minor, his interest therein being %ths.
With respect to the remaining mineral interest, it is the contention of all of the defendants that the reservation in the deed from the land bank to McRae, when read in its entirety, discloses it was nothing more *718 than a reservation of a royalty interest in the proceeds derived from the sale of the minerals produced therefrom, which royalty interest was an obligation imposed upon and to be deducted from the mineral rights, which were acquired in their entirety by McRae under the conveyance, and that, of necessity, when this interest expired for lack of production during the ten year period, the then mineral owners were relieved of this obligation. Consequently, at the time McRae, Mrs. Sanders, and the Humphreys (except the minor) conveyed the surface interest in the 412 acre tract to Horn in 1943 and 1944, they were the owners of the entirety of the minerals and the reservation in their deeds to Horn was of all of these minerals in the proportions in which they were then respectively owned by them (% by McRae, % by Mrs. Sanders, and by Mr. and Mrs. Humphrey), and they are, therefore, still the owners of all of these minerals, none having been reserved by the land bank and none having been conveyed to the plaintiff. In any event, they claim the reservation is ambiguous and the extrinsic evidence in the record, which may be resorted to for this reason, discloses the intention of the parties was that the bank would reserve a royalty interest only.
It is the contention of the plaintiff, on the other hand, that (1) the bank having reserved “a one-half interest in and to all minerals and mineral rights in and under” the property, thereby established a mineral servitude that expired for nonuse on February 28, 1948, and, at that time, reverted to him and the Humphrey minor as the then owners of the land, thus entitling them to half of the minerals under the tract in proportion to their respective interest in this land, and (2) as to the other half of the minerals, inasmuch as McRae, at the time he sold his undivided interest in the land to the plaintiff in 1944 and reserved unto himself an undivided half interest in the minerals, owned only a half interest therein (the interest under his fractional interest in the land), or a of the minerals, equivalent to %2nds (half of the minerals being owned by the bank and half of the remaining half having been conveyed to Mrs. Sanders and Humphrey in equal proportions) he actually reserved unto himself only a %2nds interest and the plaintiff became possessed of the other "hands interest; further, that inasmuch as the Humphreys and Mrs. Sanders at the time of their conveyances to him in 1943 owned only an undivided %th (or %2nds) interest in the minerals, their reservation of a ^th of that constituted the reservation of a %2nd mineral interest, and vested in the plaintiff the remaining %2nds interest formerly owned by each. In other words, that he became the owner of %2nds of the minerals under the Humphrey and Sanders deeds, the owner of %2nds under the McRae deed, and the owner of ^fssnds of these minerals when the bank’s servitude expired in 1948, thus entitling him to 2%2nds, or 1%6ths, of these *720 minerals, subject to the claim of the minor against him for a %eth interest, the remaining half being due the minor (Aieth) by the Humphreys.
The contention of the defendants that the reservation by the bank in the deed to McRae was a rpyalty, as. contra-distinguished from a mineral interest (predicated principally upon the hank’s failure to specifically reserve to itself the right of ingress and egress for purposes of exploration), is clearly without merit. The bank in unmistakable language reserved unto itself “a one-half interest in and to all minerals and mineral rights in and under the above described property.” Such a reservation under our long recognized and established jurisprudence constitutes a servitude iimposed upon the land, giving the owner thereof the right of ingress and egress for the purpose of exploring fbr and reducing to possession the minerals under the property so burdened. The so-called proviso following instead of having the effect of reducing the interest thus reserved to a hiere royalty, as contended by the defendants, is, in fact, a mandate coupled with an interest under which the land bank granted McRae the privilege of leasing the bank’s reserved mineral interest under certain specified conditions, as hereinabove set out. Of necessity, only the owner of the minerals has the right to grant such leasing privileges. See, Gulf Refining Co. v. Goode, 212 La. 502, 32 So.2d 904; Long-Bell Petroleum Co. v. Tritico, 216 La. 426; 444, 43 So.2d 782; Sanders v. Flowers, 218 La. 472, 49 So.2d 858; Smifh v. Holt, 223 La. 821, 67 So.2d 93.
However; even if it is conceded that this controversial reservation is ambiguous, as contended by defendants, thereby permitting consideration of extrinsic evidence to explain the intention of the partiés, such evidence, which was admitted' over the plaintiff’s objection, unmistakably shows the reservation was intended to be of a mineral and not of a royalty right. The defendants have themselves so construed it in later documents, particularly the lease granted the Skelly Oil Company, and the testimony of the attorney who prepared the deed from the bank to McRae, as well as the answer filed by the bank when the case was remanded, reflects that such was the bank’s intention. Consequently, the language used in another deed from the bank, drafted by another attorney, executed at a much later date — after the jurisprudence with respect to royalty rights had been crystallized,- — and affecting other property in another part of the state, is not sufficient to overcome the clear language of the deed, the testimony of the attorney who prepared it, and the other extrinsic evidence.
It necessarily follows that McRae, Mrs. Sanders, and the Humphreys, who together owned only a half of these minerals at the time of the execution of their deeds to Horn, could have reserved no greater inter *722 est than they actually owned (Long-Bell Petroleum Co. v. Tritico, supra; McMurrey v. Gray, 216 La. 904, 45 So.2d 73, 75; United States v. Nebo Oil Co., 5 Cir., 190 F.2d 1003), and that the land, when the servitude created by the bank was extinguished because of nonuse on February 28, 1948, was thereupon relieved of this obligation and its then owners (Horn and the Humphrey minor) became the owners of the mineral interest theretofore reserved by the bank. See, Gulf Refining Co. v. Orr, 207 La. 915, 22 So.2d 269; McDonald v. Richard, 203 La. 155, 13 So.2d 712; Mc-Murrey v. Gray, supra.
The second contention of the plaintiff with' reférence to the other half of the minerals is without foundation in fact. A perusal of the deeds from McRae to Mrs. Sanders • and Humphrey clearly shows he sold to each- an undivided (4 “in and to all of the right, title and interest” acquired by him from the bank, subject to the terms of the bank’s deed, and in their respective deeds McRae, Mrs. Sanders, and the Humphreys each specifically reserved from the sale their proportionate share of the minerals in and under the land, and while ordinarily there might be some doubt as to the intention of the parties under such language, the evidence is convincing that each intended to reserve all of the minerals they thought they at the time owned, conveying to Horn the surface rights to the land only.
However, the Skelly Oil Company contends that the leases acquired by it from its co-defendants covered the entire mineral interest “for the reason that the right to lease or to go upon, explore for and reduce to possession had been granted by the Federal Land Bank to McRae — was not reserved.”
In granting this lease in 1946, McRae, Mrs. Sanders, and Humphrey did not do so as the owners of the land, for they had previously sold this to Horn in 1943 and 1944. They did so as the owners of % of the minerals in their own right, McRae, with respect to the other half, acting under the mandate in the 1938 deed. It is elementary, therefore, that McRae could grant no lease affecting this half interest of the bank’s that would extend the bank’s servitude beyond the prescriptive period, in the absence of production within that time.
S. W. McRae is now deceased and the interest formerly owned by him belongs to Mrs. Bessie O. McRae as his surviving widow in community and to Mrs. Mary E. Dickerson and-Mrs. 'Ozella Talbot as his sole and only heirs.
For the reasons assigned, the judgment of the lower court is annulled and set aside and it is now ordered and adjudged that there be judgment in favor of the plaintiff, Aaron H. Horn, and the minor, Frances Gill Humphrey, and against the defendants, the Skelly Oil Company, Mrs. Bessie O. McRae, Mrs. Mary E. Dickerson, Mrs. Ozella Talbot, Fred Humphrey, Mrs. Vivia Story Humphrey, and Mrs. N. E. Sanders decreeing:
*724 (1) That the servitude created in the deed from the Federal Land Bank of New Orleans to S. W. McRae on February 28, 1938, has expired by reason of nonuse within ten years;
(2) That the entire 412 acre tract of land involved in this suit and more specifically described in Paragraph No. 1 of the petition in the former appeal, No. 40,534 on the docket of this court, is owned in indivisión by the plaintiff and the minor in the proportions of %ths by Aaron H. Horn and %th by Frances Gill Humphrey;
(3) That the minerals under this tract are owned by the plaintiff and defendants in the following proportions:
a. A. H. Horn, Jieths, free of the oil and gas lease held by the Skelly Oil Company,
b. Mrs. Bessie O. Sanders, Mrs. Mary E. Dickerson, and Mrs. Ozella Talbot, in the proportions to which they ■ are entitled under law, Jieths,.
c. Mrs. N. E. Sanders, %6ths,
d. Frances Gill Humphrey, vietlis,
e. Fred Humphrey and Vivia Story Humphrey, together, a Jioth.
It is further ordered, adjudged and decreed that the right of the plaintiff to proceed against all defendants for recovery of damages occasioned by the slander of his title to his share of the minerals under this property, his right to an accounting from the Skelly Oil Company for his proportionate share of the proceeds derived from the sale of the oil and gas produced from the W, H. Nunley Unit Lease, as reflected by his mineral acreage, and his right to recover against Fred Humphrey and his wife, Vivia Story Humphrey, for his eviction from a Ysth interest in the property and a 146th interest in the minerals, are specifically reserved.
All costs of the proceedings in this court and in the lower court are to be paid by the defendants.
HAMITER, J., concurs with written reasons.
HAWTHORNE, J., dissents and will assign written reasons.

. In their answer the Humphreys pray that there be judgment declaring them to be the owners of a %th interest in the minerals “subject to an obligation for one-eighth (%) of one-half (%) of one-eighth (%) royalty interest in the oil and gas which may be produced therefrom to and in favor of the Federal Land Bank of New Orleans, or unto the plaintiff, A. H. Horn if the rights of the Federal Land Bank have legally reverted,” but the judgment of the lower court makes no mention of this prayer.