92 So.2d 507 (1957)
J. Collins CORMIER et al., Plaintiffs-Appellants,
v.
John B. FERGUSON, Sr., Defendant-Appellee.
No. 4317.
Court of Appeal of Louisiana, First Circuit.
February 4, 1957.
*508 Dubuisson & Dubuisson, Opelousas, for appellants.
Liskow & Lewis, Lake Charles, John D. Edwards, Opelousas, for appellee.
TATE, Judge.
Plaintiffs appeal from dismissal of their suit to be declared the owners of a certain 1/32nd (or ¼th of the landowner's 1/8th) interest in the minerals produced from an 175 acre tract of land owned by them in St. Landry. At the time of suit in 1949, based upon a 1926 deed defendant was receiving payments in that proportion of the production from oil and gas wells situated on said property.
Primarily this suit involves a determination of whether a mineral right or only a royalty interest was acquired by this 1926 deed; as the answer to that question determines whether the ten years' liberative prescription against the right acquired, LSA-Civil Code, Articles 789, 3544, 3546, see 3529, was or was not interrupted by user or exercise, and, therefore, whether the right is still in existence or has been extinguished by non-user.
The distinction between the two types of interests affecting minerals is now well settled. Strictly speaking, the "mineral right" interest is in the nature of a servitude granting the owner thereof the right to explore for and extract minerals from the land subject thereto; whereas a "royalty" right or interest merely imparts to its owner a right to share in *509 production if and when obtained by the owner or lessee of a mineral right affecting the land; Horn v. Skelly Oil Co., 224 La. 709, 70 So.2d 657, Union Sulphur Co. v. Andrau, 217 La. 662, 47 So.2d 38, Daggett, Louisiana Mineral Rights (1949 Ed.), esp. pp. 19-30, 247-256.
Therefore, as both parties hereto agree, if the interest conveyed by the 1926 instrument was indeed a mineral right, as claimed by defendant, then the unsuccessful but bona fide drilling for oil in 1935 and 1936 by defendant's (and plaintiffs') mineral lessee constituted user or exercise of the servitude so as to interrupt the running of the ten years' prescriptive period for non-user, Hunter Co. v. Ulrich, 200 La. 536, 8 So.2d 531; whereas if, on the other hand, plaintiffs' contention is correct that the 1926 deed conveyed only a royalty interest, then the right owned by defendant was not exercised by such unsuccessful exploration efforts and had expired by non-user before oil was finally produced on the land in question in 1938, since actual mineral production within the prescriptive ten years is necessary to interrupt the accrual of prescription against, and to maintain the existence of, the royalty right, Union Sulphur Co. v. Andrau, 217 La. 662, 47 So.2d 38; St. Martin Land Co. v. Pinckney, 212 La. 605, 33 So.2d 169; Vincent v. Bullock, 192 La. 1, 187 So. 35.[1] (In the Andrau case, drilling had commenced 45 days before expiration of the ten years from date of the royalty sale, and from this drilling successful production resulted three days after the ten years had elapsed; the royalty interest was nevertheless held to have expired by failure of actual production within the prescriptive period.)
The deed about which this suit revolves conveyed title as follows:
"That A. J. Cormier[2] and L. C. Cormier of the Parish of St. Landry, State of Louisiana, hereinafter called "Grantor" (whether one or more), hereby grant, sell and convey unto J. B. Ferguson, Jr.,[3] of the Parish of Jefferson Davis, State of Louisiana, hereinafter called "Grantee", an undivided one-quarter (¼) interest in and to all the oil, gas, sulphur and other minerals on, in and under the following described land, situated in the Parish of St. Landry, State of Louisiana: [Then follows description of the 175 acre tract.]"
Following that conveyance and the description of the land as to which the rights attached, the deed went on to say:
"The land above described is now covered by a mineral lease from A. J. Cormier & J. C. Cormier to J. B. Ferguson, Jr., date July 29th, 1926, and recorded at Page ____ Volume ____ of the Records of the Parish of St. Landry, State of Louisiana."
And then it set forth these conditions:
"This grant is subject to the mineral lease above mentioned but includes one-quarter (¼) of all the royalties in such lease provided on oil, gas, sulphur and other minerals produced from the said leased premises after the date hereof. Should said lease above referred to expire, *510 then Grantor shall have the right and authority to execute at any time a lease or leases covering said land without the joinder of the Grantee herein or assigns, and all bonuses and rentals that may be paid for or under such subsequent lease or leases shall be paid to Grantor, but Grantee herein or assigns shall be entitled to receive one-quarter (¼) of all the royalties on oil, gas, sulphur and other minerals provided for in such subsequent lease or leases." (Italics ours.)
Counsel for plaintiffs most persuasively and logically argues that the italicized qualifying limitations incorporated in the last quoted paragraph show, construing the instrument as a whole, that what was intended to be conveyed was, not a right to develop and extract the minerals (i. e., a mineral right), but simply a right to share in the proceeds of minerals actually produced by others (i. e., a royalty interest.)
Cited to us in support of this argument are distinctions between the two types of interests set forth in cases such as in Continental Oil Co. v. Landry, 215 La. 518, 41 So.2d 73, at page 75: "The owner of the mineral right has the right of ingress to, and egress from, the land, the right to produce the minerals, the right to participate in the bonuses and delay rentals paid under the terms of any lease. On the other hand, the owner of a royalty right has none of these rights, nor is his consent even necessary for the execution of a lease by the mineral owner, his right being to share in production if and when it is had." (Italics ours.) The latter right is "passive in its nature." Id. 41 So.2d 75.
It must be noted, however, that such cases cited to us concern what are admitted therein to be royalty interests only, and the quotations are merely descriptive of the usual incidents attaching to mineral rights or royalty interests created without qualification. Such cases are not determinative of the question presently before this court, which rather, is: when what is described as a mineral right (i. e., "an undivided one-quarter (¼) interest in and to all" the minerals "on, in, and under" certain land) is limited at the time of its conveyance by the vendor's reservation of the right to execute subsequent leases and to receive the entire bonus and rentals therefor, do such limitations denote that what in reality was conveyed was merely a royalty interesti. e., merely a right to share in production without participation in lease bonuses or rentals, the consent of the owner of which is unnecessary for the execution of a lease by the landowner?
More relevant in determination of this question are the cases relied upon by the District Court and cited by defendant, Horn v. Skelley Oil Co., 224 La. 709, 70 So.2d 657, and Standard Oil Co. of Louisiana v. Futral, 204 La. 215, 15 So.2d 65, Per Curiam on rehearing, 15 So.2d 78, wherein for purposes of determining whether prescription had run it was necessary for the Supreme Court to determine whether fractional interests in minerals lying under the respective tracts, created by sale or reservation, were either mineral or royalty rights.
In both of these cases, our Supreme Court held that the grant or reservation of an undivided interest in the minerals in or under the tracts created a mineral right, despite the retention by the landowner of the right to grant subsequent mineral leases without joinder of the mineral interest owner. In the Futral case, as in the present, the landowner was to receive the entire amounts received for rentals or renewals on an existing or on subsequent lease(s).
Defendant argues herein with considerable effect, similarly to the suggestion in the Horn case at 70 So.2d 661, that the limiting proviso, instead of converting a mineral right into a royalty interest, indicates that indeed the interest in question *511 was a mineral right, since such proviso was unnecessary if the right conveyed was a royalty interest. (It is forcefully argued, for example, that the language in the proviso that "this grant is subject to the mineral lease above mentioned, but includes one-quarter (¼) of all the royalties in such lease provided" is indicative of a greater grant than a mere royalty right, which automatically consisted merely of the described right.)
Plaintiffs argue that the lease held by Gulf Refining Company pre-existing the 1926 grant of the interest in minerals herein, giving Gulf the exclusive right upon the same land to explore for and extract minerals, excludes a similar grant to defendant's assignor by the 1926 instrument and indicates that said instrument merely intended to convey a right to a share of production, i. e., a royalty interest.
This argument is not persuasive. As discussed extensively in Coyle v. North Central Texas Oil Co., 187 La. 238, 174 So. 274, undivided mineral interests are often purchased subject to a pre-existing lease when there is a prospect of development, the purchasers in effect becoming co-lessors by purchasing subject to the existing lease; and although the purchasers themselves may not intend to drill for oil themselves, they have the right to do so when such a lease granting the exclusive development privilege lapses. See also Standard Oil Co. of Louisiana v. Futral, 204 La. 215, 15 So.2d 65, involving mineral right with proviso similar to the present and sold subject to pre-existing lease. As the decision in Clark v. Tensas Delta Land Co., 172 La. 913, 136 So. 1, points out, the owner of an undivided one-half mineral right interest owns "not half of the right to the minerals, but the right to half of the minerals" under the land in question; and the landowner is "obliged, to permit" such mineral right owner "to go upon the land and explore for oil, gas, and other minerals, and to reduce them to possession, and account to the owner of the land for half of such oil, gas, or other minerals," 136 So. 2.
Conceding to plaintiffs' argument that the 1926 instrument creating the interest now litigated was ambiguous, especially in view of the unsettled state of the jurisprudence during these early years of Louisiana mineral development,[4] and that extraneous testimony is therefore admissible to prove the intent of the parties, we believe plaintiff Cormier's testimony at the trial in 1950 as to his remembered intent of 1926 to sell merely a royalty right, to be far less persuasive than plaintiffs' failure for 11 years prior to this 1949 suit to protest payment to defendant of a share in the mineral production pursuant to a division order dated May 1, 1938, executed by both plaintiffs and defendant, which division order recognized defendant's right to receive 1/32nd of (i. e., ¼th of lease rental royalties from) the oil produced from the tract. Likewise, plaintiffs and defendant joined as co-lessors (i. e., co-owners) in the 1935 lease of the mineral rights under which production was *512 eventually obtained. These actions constitute a long-standing acquiescence in the construction of the 1926 deed as conveying to defendant a still-vital mineral interest, rather than merely a royalty interest extinguished in 1936 by non-user.
LSA-Civil Code, Articles 1949[5] and 1956[6] provide that the intention of the parties to ambiguous contracts may be construed according to the practical construction placed upon the contract by the parties themselves, such as by the manner the parties have executed the provisions of the contract, or by reference to other contractseither previous or subsequent to the ambiguous contract in question between the same parties on the same subject. Texas Co. v. McDonald, 228 La. 353, 82 So.2d 37; Brown v. Sugar Creek Syndicate, 195 La. 865, 197 So. 583, Breard v. Pyramid Oil & Gas Co., 191 La. 420, 185 So. 303. (The Brown case concerns a division order executed by all parties providing for payments to be made to the owners of allegedly lapsed mineral and royalty interests; the joint execution of the division order and of the extension of the lease were held, inter alia, to have recognized the validity of the allegedly lapsed interests, citing Article 1956, 197 So. 591, syllabus 7-8.)
And we believe that application of the principles of the practical construction by the parties themselves to determine their intent, Articles 1949, 1956, LSA-C.C., affords a better rule of construction under the circumstances of this case to determining the intention of the parties (which is indeed the chief function of judicial interpretation of contracts, Article 1945, LSA-C.C.) than simply to resolve all doubts against defendant, whose predecessor in title prepared the instrument in question for signature by the other parties, under Article 1957, LSA-C.C., as urged by plaintiffs.
For in the light of the current jurisprudence the instrument conveys without ambiguity a mineral right rather than merely a royalty interest; and if the instrument is ambiguous at all, it is only so in view of the unsettled state of the mineral law at the time it was executed, and the interpretative subsequent acts and contracts of the parties based upon the disputed instrument better afford a guide to their intent at the time than one party's failure to include clarifying language, the nature and form of which would not be indicated until decisions were rendered by our Supreme Court several years later, not always without dissent, and only after serious consideration of hotly contested and deeply reasoned contradicting views by some of the ablest members of our bar.
For the above and foregoing reasons, the judgment of the District Court holding the interest in question to be a mineral right preserved by user rather than a royalty right extinguished by prescription is affirmed.
Affirmed.
NOTES
[1] Defendant alternatively contends that even if merely a royalty right was created, then prescription was suspended by the joinder of plaintiffs with him as colessor in a 1935 lease, extended jointly in 1938; and that plaintiffs are estopped by now claiming, eleven years after the joint execution of division orders and the receipt by defendant over that period of royalties, that defendant was not entitled to receive them. It is unnecessary to consider these arguments since we sustained defendant's primary argument.
[2] Deceased spouse and immediate predecessor in title of Mrs. Aline Landry Wood, formerly Cormier, co-plaintiff with J. Collins (J. C.) Cormier in this suit.
[3] Assignor and immediate predecessor in title to John B. Ferguson, Sr., defendant in this suit.
[4] It was not until Vincent v. Bullock, 192 La. 1, 187 So. 35, in 1939 that our Supreme Court with Mr. (now Chief) Justice Fournet as organ, definitively clarified the nature of a royalty interest as a real obligation imposed on and passing with the property, conditioned upon the production of minerals during the prescriptive period, being essentially a right to a share of production from the land in question.

In the absence of legislative action, our Supreme Court was required to apply the principles of our property law derived from ancient times when mineral development was unknown to the solution of legal problems arising from activities relating to this modern industry. By the adjudication of the actual problems arising over the course of many years, the main principles and theories of mineral law became settled and clarified by our Supreme Court in what is regarded by many as an example of the judicial art at its creative and statesmanlike best. See e. g., Professor Daggett's authoritative treatise, Louisiana Mineral Rights.
[5] Article 1949"When there is anything doubtful in one contract, it may be explained by referring to other contracts or agreements made on the same subject between the same parties, before or after the agreement in question."
[6] Article 1956"When the intent of the parties is doubtful, the construction put upon it, by the manner in which it has been executed by both, or by one with the express or implied assent of the other, furnishes a rule for its interpretation."