127 So.2d 816 (1961)
PHILLIPS PETROLEUM COMPANY, Plaintiff and Appellee,
v.
Emily Beaugh RICHARD et al., Defendants.
No. 59.
Court of Appeal of Louisiana, Third Circuit.
March 6, 1961.
Rehearing Denied March 29, 1961.
Certiorari Denied May 12, 1961.
*817 Charles F. Boagni, Jr., Opelousas, for defendants-appellants.
Bailey & Mouton, Charles F. Bailey, Lafayette, Liskow & Lewis, A. J. Shepard, Jr., Lake Charles, Charles T. Everett, Crowley, Alfred Veazie Pavy, by Albert J. Boudreaux, Opelousas, Phillip J. Chappuis, Crowley, for plaintiff-appellee.
Before SAVOY, HOOD and CULPEPPER, JJ.
CULPEPPER, Judge.
Phillips Petroleum Company, as the owner of an Oil, Gas and Mineral Lease under which production has been obtained, has instituted this concursus proceedings, praying that the Court pass upon conflicting claims which have arisen because the petitioner is unable to determine whether the interests reserved by the Vendor in certain sales of land are reservations of royalty or of mineral interests and because further uncertainty exists as to whether said interests have prescribed. Plaintiff deposited $5,807.08 in the Registry of the Court as being the net amount accruing to the combined interests in dispute and obtained an order of court allowing it to deposit from month to month the additional sums accruing to said disputed interests.
The lower court found that the interests reserved by the vendor in said deeds were mineral interests as distinguished from royalty and that said mineral interests had not prescribed. From this judgment those of the defendants who contend that the reservations were of royalty, rather than mineral interests, have appealed.
The evidence which was filed in the record by stipulation of counsel shows that on November 30, 1939 one Edmond Richard sold by separate deeds to Hebrard Duplechain 68 acres of land, more or less, to Mrs. Sylvanie Duplechain Henry 25 acres more or less, and to Mrs. Ernestine Duplechain Green 25 acres, more or less. In these three sales made by Edmond Richard to the purchasers named above the following identical reservations were made in favor of the vendor:
"The tract of land herein conveyed is a portion of the land included in the Oil, Gas and Mineral Lease granted by present vendor to I. N. Pharris, April 5, 1938, recorded under Entry No. 142305, Con. Bk. R-6, page 114, and now assigned by said Pharris to the Atlantic Refining Company under instrument recorded April 26, 1938, under Entry No. 142306, in Con. Bk. E-6, page 455, and vendor reserves for himself, his heirs and assigns, an undivided one-fourth of the oil, gas and other minerals under and produced and saved from said land, which reservation is equal to a one-thirty-second royalty interest under the said existing lease and as well a like royalty interest under future mineral leases in the event of the lapse or forfeiture of said existing lease, it being agreed and understood that this reservation is made and granted subject to the right of the purchaser and heirs and assigns to grant and execute such future oil, gas and mineral leases affecting the whole or any portion of the land conveyed hereunder, and this without the consent or joinder therein of the vendor or his heirs or assigns, provided there shall always be included in such leases for the benefit of the vendor or his heirs or assigns, the royalty *818 rights reserved and retained hereunder and all down payments paid to obtain such future leases, as well as all money, rental and/or bonuses received under such future leases shall be the exclusive property of the purchaser and shall be paid to him. Vendor, Edmond Richard, reserves delay rental due under the existing lease on April 5, 1940, but all subsequent delay rentals paid under said existing lease are assigned and transferred to the purchaser."
Within the ten year period following the date of the three sales described above Edmond Richard sold certain royalty interests to various parties and on his death the remaining interest owned by him passed to his widow and heirs. The defendant-appellees in these proceedings are the widow and heirs of Edmond Richard and the present owners of these various royalty interests which were sold off by Edmond Richard during his life time, one of whom is Delta Gulf Drilling Company. For purposes of brevity this group of defendants who base their claim on the "Richard Reservation" will hereinafter be referred to as the "Delta Group" this being the appellation used in the pleadings and in the opinion of the lower court and by counsel in their briefs.
The remaining defendants in these proceedings will be hereinafter referred to as the "Duplechain Group" who are the vendees in the three deeds in question and certain parties who have purchased royalty interests from them. The Delta Group contends that the Richard Reservation is a mineral interest and therefore not prescribed. The Duplechain Group contend that the Richard Reservation is a royalty interest and has prescribed because production was not obtained within ten years from the date of the reservations.
Counsel for the Duplechain Group has called to our attention the following language from the landmark case of Vincent v. Bullock, 192 La. 1, 187 So. 35, 39, decided by our Supreme Court in 1939, in which the Court defines royalty and distinguishes it from a mineral interest:
"`Royalty in itself cannot be used to designate the fundamental right which is being dealt with but only to indicate the percentage, the price, the rent, the consideration attached to or proceeding out of the right or that may proceed from it during its existence. The royalty depends upon the continued existence of the right to which it is an appendage. It cannot have a life of its own any more than could interest exist apart from the note or debt to which it is attached. If a party to a contract sells royalty under an existent lease, he is selling a part or the whole of his rent due from the * * * use of that servitude and the royalty sale is dependent upon the life and use of the servitude. If a landowner sells royalty he is selling the proceeds that may issue from his right to explore for minerals on his own land, which is an inherent part of his ownership, of the land. If a landowner sells his land and the right to explore inherent in the land and reserves royalty, he is reserving a share in the anticipated production to result if and when successful exploration ensues upon the land sold in full ownership.'

* * * * * *
"`The legal nature of royalty must be grounded upon the contract in which it appears. If it be used within the understanding of the parties to indicate a sale or reservation of the right to extract oil and gas, then it is a servitude by whatever name it may be called, and the established rules connected with this type of servitude will apply. If it is used in a lease contract to indicate a proportionate share of the production going to the landowner or the lessor of the servitude or to his lessee, the law of lease and sublease will be applied. If the word is used in the contract *819 to indicate a passive interest in possible production, without the leasing or production privilege usually inherent in the right, then a new and as yet, uninterpreted situation appears, upon which the court has not declared itself fully.'"
Counsel for the Duplechain Group argues that under the language quoted from Vincent v. Bullock above, if the interest reserved is a "passive interest," regardless of the name by which it is called, it is royalty and not minerals. Counsel argues that in the present case, although Edmond Richard called the rights which he reserved a mineral interest, it is actually a passive royalty interest because it does not include the right of ingress and egress for the exploration, development or production of minerals, nor the right to lease the property, nor to share in the bonus under the existing or any future leases, nor the right to share in the delay rentals under such leases (actually Edmond Richard did reserve the delay rental due under the existing lease on April 5, 1940 but all subsequent delay rentals paid under said existing lease were to go to the vendees).
In our opinion this argument presented by counsel for the Duplechain Group has been fully answered by our Supreme Court in Horn v. Skelly Oil Company, 224 La. 709, 70 So.2d 657, 660, in which the Court in considering an almost identical factual situation held as follows:
"The contention of the defendants that the reservation by the bank in the deed to McRae was a royalty as contra-distinguished from a mineral interest (predicted principally upon the bank's failure to specifically reserve to itself the right of ingress and egress for purposes of exploration), is clearly without merit. The bank in unmistakable language reserved unto itself a "one-half interest in and to all minerals and mineral rights in and under the above described property." Such a reservation under our long recognized and established jurisprudence constitutes a servitude imposed upon the land, giving the owner thereof the right of ingress and egress for the purpose of exploring for and reducing to possession the minerals under the property so burdened. The so-called proviso following instead of having the effect of reducing the interest thus reserved to a mere royalty, as contended by the defendants is, in fact, a mandate coupled by an interest under which the land bank granted McRae the privilege of leasing the bank's reserved mineral interest under certain specified conditions, as hereinabove set out. Of necessity, only the owner of the minerals has the right to grant such leasing privileges. See, Gulf Refining Co. v. Goode, 212 La. 502, 32 So.2d 904; Long-Bell Petroleum Co. v. Tritico, 216 La. 426, 444, 43 So.2d 782; Sanders v. Flowers, 218 La. 472, 49 So.2d 858; Smith v. Holt, 223 La. 821, 67 So.2d 93."
In the more recent case of Cormier v. Ferguson, La.App. 1 Cir., 1957, 92 So.2d 507, 510 the Court disposed of this issue as follows:
"More relevant in determination of this question are the cases relied upon by the District Court and cited by defendant, Horn v. Skelly Oil Co., 224 La. 709, 70 So.2d 657, and Standard Oil Co. of Louisiana v. Futral, 204 La. 215, 15 So.2d 65, Per Curiam on rehearing, 15 So.2d 78, wherein for purposes of determining whether prescription had run it was necessary for the Supreme Court to determine whether fractional interests in minerals lying under the respective tracts, created by sale or reservation, were either mineral or royalty rights.
In both of these cases, our Supreme Court held that the grant or reservation of an undivided interest in the minerals in or under the tracts created a mineral right, despite the retention by the landowner *820 of the right to grant subsequent mineral leases without joinder of the mineral interest owner. In the Futral case, as in the present, the landowner was to receive the entire amounts received for rentals or renewals on an existing or on subsequent lease(s)."
In our opinion the learned trial judge was eminently correct in basing his opinion on the cases cited above and concluding that the rights reserved by Edmond Richard in the three deeds in question were mineral interests and not royalty.
Counsel for the Duplechain Group argues further that the language of the Richard Reservation has been construed by the parties as establishing a royalty rather than a mineral interest. Counsel has called to our attention that Newmont Oil Company, assignee of one of the royalty interests sold by Edmond Richard, voluntarily executed a release of all interests owned by said company in the Richard Reservation in compromise of a suit filed by Ernestine Duplechain Green and Alphonse Green against said Newmont Oil Company, asserting in said suit that the Richard Reservation was a royalty interest and that it had lapsed, terminated and prescribed. It is our opinion that the compromise of this suit by Newmont Oil Company, which was not even a party to the original Richard Reservation, could certainly in no way indicate the intent of the parties to said reservations.
The Duplechain Group also contend that Edmond Richard himself construed the reservation as royalty when he subsequently sold off royalty interests accruing from said reservation. This argument is likewise without merit. The jurisprudence is well settled that a mineral right, due to its nature, is necessarily superior to a royalty right. Vincent v. Bullock, 192 La. 1, 187 So. 35; Continental Oil Company v. Landry, 215 La. 518, 41 So.2d 73; Union Oil & Gas Corporation of Louisiana v. Broussard, 237 La. 660, 112 So.2d 96. As the owner of a superior mineral interest Edmond Richard certainly had the right to sell off royalty interests which were no more than appendages of the mineral interests which he had reserved. The fact that he sold such royalty could in no way indicate that he construed the interest which he owned to be royalty rather than mineral.
The further argument advanced by the Duplechain Group that since the property was under lease at the time of the Richard Reservation, it was legally impossible to reserve a mineral right is fully answered in the case of Coyle v. North Central Texas Oil Company, 187 La. 238, 174 So. 274 where the Court held that purchasers of undivided mineral interests which are subject to a pre-existing lease become in effect co-lessors. See also Standard Oil Company of Louisiana v. Futral, 204 La. 215, 15 So.2d 65 and Cormier v. Ferguson, La.App., 92 So.2d 507.
The sole remaining question for determination by the Court is whether the mineral interests reserved by Edmond Richard have prescribed because of non-use. The chronological history of the development of these lands for oil, gas and other minerals is set forth in the written opinion of the trial judge as follows:
"(a) On March 17, 1942, by Order No. 36, the Conservation Department of the State of Louisiana established units for production from the Tweedel sand in the Lewisberg Field, Acadia Parish, Louisiana, requiring that only one well be drilled per unit, and that said well be located in the approximate center of the unit.
"(b) Unit 7 of this field included part of the Duplechain tract of 68 acres, and part of the Henry tract of 25 acres.
"(c) Unit 8 of this field included all of the Green tract, and the remaining portions of the Duplechain and Henry tract.

*821 "(d) On May 3, 1946, all three landowners executed a joint lease covering all three tracts of land.
"(e) On February 8, 1949, a well was commenced at the Duplechain tract in Unit 7, and completed as a producer on March 12, 1949, since which date the well has produced continuously.
"(f) On November 18, 1949, a well was commenced in Unit 8 but not on any of three tracts of land involved here, and completed as a producer on December 24, 1949, placed on production January 25, 1950, and has produced continuously since that time."
Insofar as the lands located in Unit 7 are concerned, it is not disputed that the drilling and completion of a producing well thereon, prior to the expiration of ten years from the date of creation of the mineral servitudes, constituted user thereof which interrupted the running of prescription. See Boddie v. Drewett, 229 La. 1017, 87 So.2d 516, 518.
As regards Unit 8, the above facts show that the unit well was not commenced until November 18, 1949, 12 days before the accrual of prescription against the Richard Servitude, and it was not completed as a producer until after the ten years had elapsed. The facts further show that the well in Unit 8 was not located on any of the three tracts of land in question. Although the Delta Group contends that the mere spudding in of the well on Unit 8 constituted use of the minerals on all of the lands located within the unit, particularly where the well was completed as a producer, we do not find it necessary to pass upon this contention because the "obstacle doctrine" set forth in the decision of our Supreme Court in Boddie v. Drewett, supra, is clearly determinative of the factual situation in the present case. In Boddie v. Drewett the defendant owned a mineral interest created on December 5, 1941 under a 12 acre tract of land. On March 31, 1949 the Commissioner of Conservation issued an order creating two 640 acre drilling units includ-the 12 acre tract. The order directed that all wells drilled on the units be located within 330 feet of the center thereof and the 12 acre tract was not within the area designated for the drilling of wells. A first well was drilled in December 1949 within ten years following the creation of the mineral servitude at a location off of the 12 acre tract but this well was abandoned as dry. Subsequently, another well was drilled at a new location, but still off the 12 acre tract in question and this well was completed as a producer. The productive well was not commenced until April 4, 1952 and completed on October 1, 1952 both dates being more than 10 years following the creation of the mineral servitude. Although the Court held that the drilling of the dry hole in December of 1949 did not constitute use of the servitude on the 12 acre tract, the Court did hold that the order of the Commissioner of Conversation constituted an obstacle to the use of this servitude which suspended the running of prescription. The Court held as follows:
"Article 792 of the Civil Code provides:
"`If the owner of the estate to whom the servitude is due, is prevented from using it by any obstacle which he can neither prevent nor remove, the prescription of nonusage does not run against him as long as this obstacle remains.'"
"A review of the jurisprudence in mineral cases dealing with this Article reveals that, in most instances, the Court has found that the facts pleaded as constituting obstacles were insufficient to support a suspension of the running of prescription. But, when the facts exhibit a real obstacle to the use of the servitude, such as the lawful orders of the Commissioner of Conservation, the codal provision applies and the running of prescription is suspended by operation of law. This was recognized in Hardy v. Union Producing Co., 207 La. 137, 138, 20 So.2d 734, 737, *822 and more recently in Sohio Petroleum Co. v. V. S. & P. R. R., 222 La. 383, 62 So.2d 615, 620.
"`In the case at bar, we think it evident that the order of the Commissioner of Conservation of March 31, 1949, imposed an effective obstacle to the use of the servitude. It provided that every well upon the drilling units was to be located not more than 330 feet from the center of each unit and that not more than one well on each unit would be allowed to produce from the "D" sand or the Vaughn and Bodcaw sands. Thus, drilling operations on the 12-acre tract were prohibited by the order which, being based on geophysical and scientific findings and entered for the purpose of avoiding waste and preventing the unnecessary drilling of wells, was a valid conservation measure authorized by the Constitution and laws of this State. Article VI, § 1 of the Constitution and R.S. 30:1-30:20."
In the present case the Richard Reservations were created on November 30, 1939, Unit 8 was created by order of the Commissioner of Conservation dated March 17, 1942, the well was commenced on November 18, 1949 and completed as a producer on December 24, 1949. Prescription was most certainly suspended from the date the well was commenced on November 18, 1949 until it was completed as a producer on December 24, 1949 because only one well could be drilled in the unit. By virtue of this suspension the servitude was still in effect when production was obtained on December 24, 1949. The law is well settled that the extraction or draining of minerals lying underneath a tract of land through a well drilled on another tract of land but located in the same unit formed by the Commissioner of Conservation constitutes use as to the entire area of the unit, sufficient to interrupt the running of prescription. Ohio Oil Company v. Kennedy, La.App., 28 So.2d 504; Sanders v. Flowers, 218 La. 472, 49 So.2d 858; Smith v. Holt, 223 La. 821, 67 So.2d 93; Union Oil Company of California v. Touchet, 229 La. 316, 86 So.2d 50 and Boddie v. Drewett, supra.
For the reasons hereinabove set forth the judgment appealed from is affirmed. All costs of this appeal are assessed against the defendants-appellants.
Affirmed.

On Application for Rehearing.
Rehearing denied, en Banc.