138 So.2d 138 (1962)
Arthur MELANCON, Plaintiff-Appellant,
v.
Dolty (Dolte) CHERAMIE, and Dave J. Robichaux, Defendants-Appellees.
No. 5478.
Court of Appeal of Louisiana, First Circuit.
February 6, 1962.
Rehearing Denied March 14, 1962.
Certiorari Denied April 30, 1962.
*139 Frank D. V. de la Barre, New Orleans, for appellant.
Pugh, Lanier & Pugh by John Lanier, Thibodaux, for appellee.
Before ELLIS and HERGET, JJ., and MILLER, J. pro tem.
ELLIS, Judge.
Plaintiff-appellant has appealed from a judgment of the District Court for the Parish of Lafourche in favor of Dave J. Robichaux, defendant appellee, decreeing that the following two instruments constitute a conveyance of a 1/16th mineral interest, rather than a mineral royalty interest, to-wit:
"1. Sale or assignment by Arthur Melancon as grantor in favor of Dolty (Dolte) Cheramie, as grantee, dated September 20th, 1951, duly recorded in the Conveyance Records of Lafourche Parish, Louisiana, in C.B. 156, Folio 291.
"2. Sale or assignment by Dolty (Dolte) Cheramie to Dave J. Robichaux dated July 6, 1953, duly recorded in the record of the Parish of Lafourche in C.B. 172 Folio 216, under Entry No. 113,936."
The plaintiff-appellant was and is the owner of 120 acres of land in the Valentine Oil Field in Lafourche Parish, and on September 20, 1951 he entered into the following sale to Dolty (Dolte) Cheramie and we quote the pertinent portions of said instrument necessary to a decision of this case, the question being whether said instrument conveys a mineral interest or a mineral royalty interest, to-wit:
"SALE OF ROYALTY
STATE OF LOUISIANA
PARISH OF LAFOURCHE
"KNOW ALL MEN BY THESE PRESENTS that ARTHUR MELANCON * * * does by these presents grant, bargain, sell, convey and deliver, with full guarantee of title and with complete transfer and subrogation of all rights and with complete transfer and subrogation of all rights and actions of warranty against all former proprietors of the property herein conveyed to and unto: DOLTY CHERAMIE * * * and assigns, the following described property to-wit: One sixteenth (1/16th) of the oil, gas, sulphur and other minerals, in and under and that may be produced from the following described lands situated in the Parish of Lafourche, Louisiana: * * *.
"It is understood between the parties hereto that this sale is made subject to any valid and duly recorded oil, gas or other mineral lease, but covers and includes one-sixteenth (1/16th) of all the royalties provided on oil, gas, sulphur and other minerals due and to become due under the terms of any such lease.
"It is understood and agreed between the parties that no interest is sold in any money rentals that may be hereafter paid in order to keep such lease in effect without drilling but on the contrary, it is specifically understood that any and all such money rental will be paid to the vendor herein.
"This sale is made for the consideration of the sum of Twenty-Two-Hundred and Fifty and no/100 ($2,250.00) Dollars, cash in hand paid, receipt of which is hereby acknowledged.
"IN WITNESS WHEREOF this instrument is signed on the 20th day of September 1951. Both parties stated that they did not know how to write and affixed their mark hereto.
 his
 Dolty Cheramie Sr. x
"WITNESSES: mark
"Dolty Cheramie, Jr. his
"Gillis J. LeBlanc Arthur Melancon x
 mark"
On July 6, 1953 Dolty Cheramie entered into a sale to Dave J. Robichaux of what *140 he had acquired from plaintiff-appellant, Arthur Melancon, by deed of September 20th, 1951, quoted in its pertinent portions above, and the pertinent portions of this agreement and sale are as follows:
"STATE OF LOUISIANA
PARISH OF LAFOURCHE
"THIS AGREEMENT made on this 6th day of July, 1953, by and between DOLTY CHERAMIE, and/or Dolte Cheramie, one and the same person,............ and DAVE J. ROBICHAUX,............ WITNESSETH:

"WHEREAS, by instrument dated September 20, 1951, recorded in Conveyance Book 156, page 291, under Entry No. 99828, records of the Parish of Lafourche, Louisiana, ARTHUR MELANCON, husband of Georgiana Allemand, did execute in favor of DOLTY CHERAMIE (Dolte Cheramie), a document wherein he sold one sixteenth (1/16) of the oil, gas, sulphur and other minerals, in and under and that may be produced from the following described lands, situated in the Parish of Lafourche, Louisiana:

* * * * * *
"NOW, THEREFORE, DOLTY CHERAMIE (Dolte Cheramie), * * for and in consideration of Five Thousand and no/100 ($5,000.00) Dollars, and other good and valuable considerations, * * * has sold, assigned and conveyed and does by these presents, sell, assign and convey unto DAVE J. ROBICHAUX * * * for himself, his heirs, executors, successors and assigns, a one sixteenth (1/16) of the oil, gas, sulphur and other minerals from the hereinabove described tract of land.
"By this instrument it is the intention of DOLTY CHERAMIE (Dolte Cheramie) to convey and DAVE J. ROBICHAUX to receive all of the interest that Dolty Cheramie (Dolte Cheramie) acquired in that mineral deed executed by ARTHUR MELANCON TO DOLTY CHERAMIE, dated September 20, 1951 recorded in Conveyance Book 156, page 291, under Entry No. 99828, of the records of Lafourche Parish, Louisiana."
On the date that the above sales or assignments were executed, the lands of Arthur Melancon were under lease to The Texas Company. In 1954 Plaintiff-appellant filed suit against The Texas Company for the annulment of its lease, which resulted in a decree in 1956 by the Supreme Court of the State of Louisiana affirming a judgment of the District Court of the Parish of Lafourche, Louisiana, ordering the cancellation of The Texas Company lease. The land was subsequently leased to Louis J. Roussell, whom Arthur Melancon, plaintiff-appellant, testified was responsible for attorney fees and all costs of the cancellation suit, as well as in the case at bar. When it was discovered that defendant-appellee, Dave Robichaux, was contending that the sale from Melancon to Dolty Cheramie and by the latter to Robichaux was one for a mineral interest rather than a royalty interest, Roussell, as a protection and precaution, then secured a lease from Duard Eymard, Emile T. Eymard, and Louis J. Eymard, covering a 1/16th mineral interest, although Plaintiff-appellant herein testified that they had purchased only seven and one-half acres royalty interest, or 1/16th of 1/8th, and also a lease for 1/16th mineral interest from John B. Plaisance, who also testified that he had only purchased a 1/16th of 1/8th or seven and one-half acres royalty from the plaintiff-appellant. After the filing of the present suit an effort was made to lease from Dave J. Robichaux, defendant-appellee, but the offer was refused by the latter. The present suit was filed on November 7th, 1956, several months after the cancellation of The Texas Company lease in which the plaintiff-appellant sought a declaratory judgment decreeing that the instrument and assignment dated September 20th, 1951, recorded in Conveyance *141 Book 156, folio 291 of the conveyance records of Lafourche Parish, Louisiana, only provided for and only conveyed to the purchaser, Dolty Cheramie, a royalty interest equivalent to 1/16th of the 1/8th royalty (or 1/128th) of the oil, gas and other minerals, on, under and which may be produced from the Melancon lands comprising 120 acres, and further decreeing that the deed of July 5, 1953, recorded in Conveyance Book 172 folio 216 of the conveyance records of Lafourche Parish, Louisiana, only transferred and conveyed to Dave J. Robichaux, appellee herein, the same royalty interest acquired by Dolty Cheramie or 1/16th of the 1/8th royalty interest, or 1/128th of the oil, gas or other minerals on, under and which may be produced from the 120 acre tract of plaintiff-appellant. In the alternative, and only in the event that the court should hold that the deeds in question provided for a mineral rather than a royalty interest, then in such alternative plaintiff-appellant prayed that the deed whereby he sold or transferred to Dolty Cheramie on September 20th, 1951 be reformed, altered and corrected so as to provide for the transfer and assignment of a royalty interest equivalent to 1/16th of 1/8th or 1/128th.
Defendant, Robichaux, filed an answer which is in the main a general denial of the claims of the plaintiff, Melancon, however, he alleged in his answer that a dispute exists between the parties as to the true meaning and intent of the deed of September 20th, 1951, and that a declaratory judgment should be rendered herein interpreting and construing the terms of said deed of September 20th, 1951, as well as the deed of July 6, 1953, but the defendant, Dave J. Robichaux, averred that such decree should provide for a mineral interest rather than a royalty interest. The defendant, Robichaux, also alleged in his answer that he in good faith relied on the public records of the Parish of Lafourche when he acquired this interest from Dolty (Dolte) Cheramie by the deed Dated July 6th, 1953.
The case was duly tried and with written reasons the District Judge held that the sale or assignment by plaintiff-appellant, Arthur Melancon, to Dolty Cheramie, on September 20th, 1951, recorded in COB 156, folio 291, transferred to Dolty Cheramie 1/16th of the minerals rather than 1/16th of 1/8th royalty, and, hence, the deed from Cheramie to Robichaux in 1953 likewise transferred minerals, for by this latter deed Robichaux could get no more than Cheramie got from Melancon initially in the 1951 transfer or assignment.
The case is now before this Court on appeal and counsel for plaintiff-appellant has set forth in his brief an "ASSIGNMENT OF ERRORS" which he contends was committed by the District Court and which are set forth by him as follows:
"1. The Trial Court erred in holding that an instrument bearing the caption SALE OF ROYALTY and containing the usual customary clause relative to the transfer of royalty interest was nevertheless a sale of mineral rights merely because it contained the following clause, to-wit:
"`It is understood and agreed between the parties that no interest is sold in any money rentals that may be thereafter paid to keep such lease in effect without drilling; but, on the contrary, it is specifically understood that any and all such money rentals will be paid to the vendor herein.'
"2. The Trial Court erred in not recognizing that the essential difference between a sale of royalty interest and a sale of a mineral interest in land leased for minerals is one of fact since the following phrase is customarily and commonly used in both royalty sales and the sale of mineral rights, to-wit:
"`* * * bargain, grant, sell and convey the following described property, to-wit: one/fraction of the oil, gas, sulphur, and other minerals, in *142 and under, and that may be produced from the hereinafter described lands,';
"3. The Trial Court erred in not construing the deed as a SALE OF ROYALTY as it was captioned, since the undisputed facts show that the intention of the parties was to transfer 7½ royalty acres, and the ambiguity resulted from the language barrier plus the error or inability of the Notary Public to properly document this intention.
"4. The Trial Court erred in calling one deed a Sale of Minerals and letting another remain a Sale of Royalty when the provisions of both are virtually identical:
(a) As to the caption (SALE OF ROYALTY v. ROYALTY DEED).
(b) As to the intent to transfer 7½ royalty acres in each instance.
(c) As to the well, acreage and purchase price. (Tr. pg. 64)
(d) As to the status of rentals. (See paragraph 1 under Section III and compare with paragraph 3 of Royalty deed at Tr. p. 49.)"
On the other hand, counsel for defendant-appellee, as well as the Judge of the District Court, as shown by his written reasons, placed great stress upon the clause quoted in the "ASSIGNMENT OF ERRORS" No. 1 which reserved any money rentals that may be hereafter paid to keep such lease in effect without drilling and which stated that it is specifically understood that any and all such money rentals be paid to the vendor herein. Counsel for defendant also placed great stress upon the wording of the clause transferring the 1/16th "of all oil, gas, sulphur and other minerals, in and under, and that may be produced from the following described lands situated in the Parish of Lafourche, Louisiana:" which is treated by counsel for plaintiff-appellant in his second "ASSIGNMENT OF ERRORS."
We will consider the "ASSIGNMENT OF ERRORS" by counsel for plaintiff-appellant in the order set forth above, together with a consideration of counsel for defendant-appellee's contention as to the error under discussion.
The conclusions of the District Judge as to the effect of the clause under consideration and the basis therefor is shown in his written reasons for judgment to be as follows:
"The record discloses that, prior to the sale in question, from Melancon to Cheramie, Melancon sold certain of his mineral holdings to Mr. Harvey Peltier (Tr. pages 50 and 51). As a result of this mineral sale to Mr. Peltier, plaintiff discovered that the money he had been receiving for rentals had been reduced and became dissatisfied. As a further result of this mineral sale to Mr. Peltier, subsequent sales of mineral interests by Mr. Melancon contained a clause reserving the lease rentals. One of plaintiff's contentions that the instrument in question is a sale of royalty, rather than a sale of minerals, is based on the fact that, in the instrument in which he sold to Cheramie, Melancon specifically reserved the money rentals. This contention appears to us to be without merit. For if this was in fact a sale of royalty, such a clause would have been unnecessary since it is clear under our law that a royalty owner will not receive the rentals; rather, they to the owner of the minerals under the land. Vincent v. Bullock, 192 La. 1, 187 So. 35 (1939); Bennett v. Robinson, La.App., 25 So.2d 641 (1946); Union Sulphur Co. v. Lognion, La. App., 26 So.2d 845 (1946); and Union Sulphur Co. v. Andrau, 217 La. 662, 47 So.2d 38 (1950).
"Following Melancon's sale to Mr. Peltier with which he became dissatisfied because of the reduction in his rentals, he made other sales to various individuals besides Mr. Cheramie; and an examination of these other sales reveals that they all contain the clause pertaining to the reservation of rentals. (See Defendant's Exhibits `D-5,' *143 "D-6', and `D-8', and compare with `D-9' and `D-3', the sales by Melancon to Mr. Peltier and Dolty (Dolte) Cheramie.
"It is significant to note that, while Mr. Melancon contends that Mr. Gouaux, the Notary who prepared the sale from Melancon to Cheramie, made a mistake and prepared a mineral deed rather than a royalty deed; nevertheless, the other deeds in which Melancon sold mineral interests are identical, and they were not all prepared by Mr. Gouaux as the Notary.
"There is also testimony by both Mr. Robichaux (Tr. page 131) and by the plaintiff's witness, Mr. Roussel (Tr. page 106) that the inclusion of such a clause reserving the rentals in a mineral sale is not an uncommon practice in Louisiana. It is clear to us that the inclusion of such a clause in the instrument leaves no doubt that the act in question was intended to be a sale of minerals, otherwise, such a clause would have been superfluous in the deed."
There is no question but that under our law a royalty owner will not receive rentals, unless otherwise provided in the sale or assignment of such royalty, and it is equally true that the owner of minerals receives the rentals, unless otherwise provided in the sale or assignment of such minerals, however, there is no prohibition against the inclusion of the clause in the sale reserving the rentals to the vendor or grantor.
There is also no doubt from the record that the plaintiff-appellant became fully aware of the above law with regard to mineral and royalty assignments as a result of the Peltier deed, however, he never denied that the latter deed covered minerals and royalties, although it is equally clear that at that time he did not know the difference between a mineral and a royalty sale. It is also shown in this record that plaintiff-appellant was unable to read and write, as well as the defendant, Dolty Cheramie.
The sale to Peltier by plaintiff-appellant was dated the 6th of July, 1949 at which time the land was under lease to The Texas Company but no production nor drilling had commenced. It is interesting to note that this sale or assignment contains the following reservation: "And a like interest in all money rentals that may be hereafter paid in order to keep such lease in effect without drilling." The same argument could be made with regard to this deed by the inclusion of such a clause as is being made by the inclusion of a like clause in the sale or assignment from plaintiff-appellant to Dolte Cheramie. It is true that such a deed is captioned at the top, "Sale of Minerals and Royalties,", however, it is undisputed that it was a sale of minerals subject to a lease, and without this clause Peltier would have received his proportionate share of any rentals.
We cannot agree with our learned brother below that the subsequent sales which he has specifically listed as "D-5" (This is an error and should be "D-3"), the same by plaintiff-appellant, Melancon, to Dolty Cheramie, "D-6", sale or assignment by Melancon to Plaisance, and "D-8", sale by Melancon to Duard Eymard, Emile T. Eymard, and Louis J. Eymard, were sales of mineral interests but are firmly of the opinion that they were sales of royalty interests for reasons which we shall give or discuss hereinafter in this opinion. We do not understand counsel for plaintiff-appellant to contend that the notary who prepared the sale from plaintiff-appellant to Cheramie made a mistake and prepared a mineral deed rather than a royalty deed but that the notary prepared exactly what he was supposed to prepare, a royalty deed. It is true that the same notary did not prepare all the deeds but he also prepared the deed which is identified as Exhibit "D-8" from Melancon, plaintiff-appellant, to the three Eymards, and this deed is an exact duplicate of Exhibit "D-3" which is a deed from Melancon to Cheramie and which is the entire basis of Robichaux's deed insofar as the Melancon property is concerned. Whatever Cheramie got under Exhibit "D-3" controls the interest which Robichaux got, for Cheramie *144 could not sell him more than he had to the detriment of Melancon. The record clearly shows that Robichaux is not an innocent third party purchaser. We have already discussed the Peltier mineral deed in which a provision or clause was inserted or is contained in the mineral deed that the Peltier's were to receive the ¼th interest in all money rentals, thereinafter paid in order to keep the lease in effect without drilling. We are aware of the fact that it might be argued that the caption of the Peltier sale was for a "sale of Minerals and Royalties," therefore, if he was to receive these rentals under the purchase of royalties, such a clause was necessary, however, for the reasons previously given the sale of minerals in this deed was all that was necessary to give the Peltiers the rental money under the law, and without the necessity of such a clause.
While we are discussing a comparison of other sales or assignments and the argument that such a clause providing a reservation and retention of all bonuses and rentals by the grantor is conclusive, controlling and leaves no doubt that the act in question was intended to be a sale of minerals, let us examine "P-2", which is a deed from Plaintiff-appellant, Arthur Melancon, to defendant-appellee, Dave Robichaux, and which it is undisputed and agreed by all parties including the latter that it is a royalty deed and not a mineral deed. This deed is captioned at the top "ROYALTY DEED". In this deed plaintiff-appellant transferred to defendant Robichaux 1/128th "of the whole of any oil, gas, sulphur and other minerals and casing-head gas, in and under and that may be produced from the hereinafter described land; delivery of said royalties to be made to the grantee herein in the same manner as is provided for the delivery of royalties by any present or future mineral lease effecting said lands, the same being situated in the Parish of Lafourche, Louisiana, described as follows: * * * and the grantor further reserves the right to receive and retain all bonuses and rentals paid for or in connection with any present or future lease * * *". This deed is unquestionably and undisputedly a royalty deed and there was no necessity for such a reservation by the grantor, however, the defendant himself drew this deed or controlled the preparation of this deed and it contained such a reservation. In one respect such a clause is surplusage but from another standpoint or respect it practically forever forecloses any misunderstanding or disagreement as to who is to receive and retain the rentals. We believe that instead of stamping the deed as a mineral deed that it is stronger evidence that it is and was intended for a royalty deed. (Emphasis added)
"Assignment of Error No. 2"
There is no doubt that the clause "bargain, grant, sell and convey the following described property, to-wit: one/fraction of the oil, gas, sulphur and other minerals, in and under and that may be produced from the hereinafter described lands" is used interchangeably in mineral and royalty sales, as used in the mineral sale to Peltier, the royalty sale to Plaisance, and the Eymard, supra, in which the exact clause was used, all of which contained the exact clause under consideration. Unless there is positive language which classified or identified the sale or assignment containing such a clause as definitely one or the other, it becomes a question of fact. There is testimony that the acts in question are ambiguous and, therefore, testimony is admissable to establish the true intent of the parties and classification of the act. A definition of, or a distinction between, a royalty and a mineral interest which is so well-settled in our jurisprudence, see Continental Oil Co. v. Landry et al., 215 La. 518, 41 So.2d 73; Cormier v. Ferguson, La. App., 92 So.2d 507; Bennett v. Robinson, La.App., 25 So.2d 641; Crown Central Petroleum Corp. v. Barousse, 238 La. 1013, 117 So.2d 575, and authorities cited in these cases, would be of no assistance in determining whether the plaintiff-appellant sold a royalty or mineral interest to Dolty Cheramie. *145 The question must be answered from the deed itself and other deeds introduced in evidence, as well as the oral testimony and other documents in the record. Our discussion of the record in this respect will cover "Assignment of Error" nos. 3 and 4.
The facts reveal that plaintiff-appellant owned 120 acres which he leased to The Texas Company on July 20th, 1944, and which lease provided for a 1/8th royalty to him. On February 27th, 1948 the term of the lease was extended for five additional years.
On July 6th, 1949 plaintiff-appellant sold a thirty acre mineral interest to the Peltiers, which it is undisputed was a mineral deed in which ¼th of plaintiff-appellant's mineral interest was transferred and assigned, as well as a proportionate interest in all rentals. As previously stated it was from this sale of minerals that the plaintiff-appellant really became aware of the difference between a transfer of minerals and one of royalty, specifically as to the payment of the annual delay rentals which went to the Peltiers according to their proportionate share of the minerals that they had purchased, and the testimony preponderates that plaintiff-appellant never forgot this and thereafter dealt in so many royalty acres in arriving at an agreement as to the royalty interest he would sell and the testimony removes any and all doubt but that plaintiff-appellant only agreed to sell and transfer to the Eymards and the latter agreed to purchase 7½ royalty acres for $300.00 per acre or a total consideration of $2250.00, which was consummated by a deed on the 10th day of September, 1951 prepared by the same notary who prepared the main deed in question from plaintiff-appellant to Cheramie, and which was captioned at the top "SALE OF ROYALTY" and which in the body of the deed transferred 1/16th which, as shown by the testimony, clearly referred to 1/16th of 1/8th or 1/128th royalty interest. Seven and one-half acres is 1/16th of 120 acres. As stated by counsel for plaintiff-appellant in his brief, "A ROYALTY ACRE is that royalty interest in production attributable to one acre under a 1/8th mineral lease." This Eymard deed in the main is an exact duplicate of the deed by plaintiff-appellant to Dolty Cheramie, both of which were prepared by the same notary.
Prior to the passage on the 20th day of September, 1951 of the deed from plaintiff-appellant to Dolty Cheramie, the testimony reveals that Cheramie contacted plaintiff-appellant and asked him if he would sell him 7½ acres of royalty and an agreement was reached for a consideration of $300.00 per acre or $2250.00 for the total acreage. The testimony of plaintiff-appellant and Cheramie is in entire accord that the former was selling and the latter was buying a royalty interest equal to 7½ acres of the 120 acres under which the former had retained a 1/8th royalty interest. The parties went before Mr. Eugene Gouaux, a Notary Public, who prepared this deed and who had prepared the Eymard deed. An explanation was made in French to the notary by plaintiff-appellant and Cheramie that the latter was purchasing from the former 7½ acres of his royalty, as well as some mention of the Peltier deed with reference to the loss of future rentals about which the plaintiff-appellant wanted no mistake. The notary remembered and so testified, that he remembered Mr. Melancon and Mr. Cheramie discussing with him that one was selling and the other was buying a specific number of royalty acres, but he did not remember the exact acreage. This notary testified that he put in the consideration which was given him by the parties of $2250.00, although he had no recollection of the price per acre. The $2250.00 for 7½ acres is correct and is corroborative of the testimony of both Cheramie and plaintiff-appellant in this case. While it is true that the notary, for whom the members of this court have the highest esteem, did testify that in his opinion the plaintiff-appellant intended to sell and Cheramie intended to buy a mineral interest rather than a royalty interest, the positive testimony of the two most interested parties at that *146 time in the transaction, vis., plaintiff-appellant and Cheramie, both, without equivocation or hesitancy, was that the only agreement between the two was for the sale and purchase of 7½ acres of royalty. There is no doubt that the Peltier deed was discussed as well as the rentals, but we believe that, in effect, the confusion can be reconciled and is cleared up by plaintiff-appellant's testimony (Tr. 110) under direct examination when he was asked:
"Q. Did you discuss with Mr. Dolty Cheramie any previous sales that you had made?
"A. Yes. I told him I didn't want to sell any more like I had sold to Mr. Peltier."
Plaintiff-appellant also testified that after the sale of 30 acres to the Peltiers he never wanted to sell any more of his minerals nor lose any of the money for rentals. The entire transaction was explained to the Notary in French and the latter frankly testified that he was not fluent in that language. The notary had no real explanation as to why he put "SALE OF ROYALTY" as a caption at the top on the typewritten instrument which he specially prepared. The deed to the Eymards which was acknowledged before the same notary and presumably drawn by him also has a caption "SALE OF ROYALTY" at the top and beginning and also contains the exact same language as it effects the question before the court as is contained in the sale from plaintiff-appellant to Cheramie now under discussion.
There is an additional corroborative fact which we have omitted in discussing the preparation of the deed by the notary from the explanation given by the plaintiff-appellant and the purchaser, Cheramie. The plaintiff-appellant testifying further on direct examination, when asked:
"Q. Can you recall what discussions were had in Mr. Gouaux' office between you and Dolty Cheramie and Mr. Gouaux?
"A. Yes. We went to Mr. Gouaux' office. We asked Mr. Gouaux that we wanted to pass a sale. We told Mr. Gouaux that I wanted to sell 7½ acres of royalty; that I didn't want to sell like I had already sold to Mr. Peltier. I wanted to sell royalty." (Emphasis added.)
We believe that it is clear from the testimony in this record that what plaintiff-appellant meant when he told the notary that he did not want to sell like "I had already sold to Mr. Peltier. I wanted to sell royalty," was that he did not want to pass a sale for a mineral interest, that he did not want to lose future rentals. Plaintiff-appellant's testimony is practically the same as to the sale to the Eymards although there is no mention of discussion with the notary.
In the record is also a sale from John B. Plaisance, brother-in-law of the plaintiff-appellant, with regard to a sale by the latter to him and which is phrased in the same language as to the clauses under discussion as the deeds to the Eymards and to Dolty Cheramie, although this deed was prepared by Mr. Theodore Lalande, Jr., Notary Public in and for the Parish of Lafourche, Louisiana, Plaisance' testimony is fully corroborative of the testimony of plaintiff-appellant.
It is to be noted that Plaisance was the brother-in-law of the plaintiff-appellant. It is also true that he executed a lease to Louis J. Roussell, and although it would be to his interest to have it a mineral transfer, he frankly and positively testified on the trial that he still only purchased a royalty interest regardless of any lease to Roussell. It might be well at this point, although we have mentioned it heretofore, to state that the leases which Roussell took from the Eymards and Plaisance were frankly done as a protection and precaution in the event the Court should hold these parties had received a mineral interest rather than a royalty interest. As a matter of fact, Roussell testified that in his *147 opinion they had only received a royalty interest but that the deeds being ambiguous, he obtained these leases.
In connection with the payment of the consideration by Dolty Cheramie to plaintiff-appellant, it is shown by the testimony that neither of those two gentlemen could read or write and that Benito Cheramie, son of Dolty Cheramie, wrote the check for the payment of $2250.00 consideration for the sale. On this check, printed in the left hand corner is the word "FOR _____". Written by Benito Cheramie in this blank space is the word "ROYALTY". This check is dated September 20th, 1951, the same date as the sale and the notary identified it as having been given to him and by him to plaintiff-appellant. The notary was also paid by a $14.00 check signed by the same party on behalf of Dolty Cheramie.
In addition, a Mr. Vinet testified that he was approached by the defendant Robichaux to see if Cheramie would sell his royalty interest that he had acquired from plaintiff-appellant. He was positive that he was asked to find out about the sale of the royalty interest rather than the mineral interest from plaintiff-appellant. Furthermore, the royalty deed which is captioned "SALE OF ROYALTY" from plaintiff-appellant to defendant Robichaux on the 22nd day of October, 1952 expresses a consideration of $3750.00, but the undisputed testimony shows it was $1000.00 per acre for 7½ acres of royalty, or $7500.00. It is therefore most significant that he purchased 7½ royalty acres from plaintiff, affecting the same land subjected to the interest purchased from Doty Cheramie, a very short time prior to the Cheramie sale to him, and paid plaintiff the same base price ($1,000.00 per royalty acre), that he paid Doty Cheramie. Under these facts, defendant-appellee was duly notified as to the character, nature and classification of the interest he was purchasing, he was not an innocent purchaser, and he was willing to pay $1,000.00 per royalty acre for a royalty interest affecting plaintiff's land.
As to this Robichaux deed, Dolty Cheramie testified that he would never have signed it if he had known it was transferring a mineral interest; that he had agreed to sell 14½ acres which Robichaux seems to think was 14 acres, for $14,000.00, but that it was distinctly to be royalty; that he had never obtained any mineral interest from the plaintiff-appellant and never intended to transfer such an interest to Robichaux. The consideration in the deed from Cheramie to Robichaux of $1000.00 per acre is the same as was paid by Robichaux to plaintiff-appellant for an admitted royalty interest which all parties concerned testify, except Robichaux, was to cover 7½ acres of royalty out of the 120 acres, or 1/16th of 1/8th, equalling 1/128th, royalty interest.
There is one other clause in the sale from plaintiff-appellant to Dolty Cheramie, which is also contained in the other sale of royalty to Plaisance and Eymard, which becomes important in view of the total absence of any evidence on the face of this deed that there was any intention or that it did transfer a mineral interest rather than a royalty interest, and in view of the preponderance of the evidence that the deed was a sale of a royalty rather than a mineral interest, and the captioning of the deed by the notary as a "SALE OF ROYALTY," and this clause is as follows:
"It is understood between the parties hereto that this sale is made subject to any valid and duly recorded oil, gas or other mineral lease but covers and includes 1/16th of all the royalties provided on oil, gas, sulphur and other minerals due and to become due under the terms of any such lease."
It means exactly what it says. The sale includes a 1/16th of the royalties provided in the lease to which it is made subject and which is 1/8th of the oil, gas or other minerals produced from the land.
It is contended that the case of Cormier v. Ferguson, supra, is controlling as to the effect of such a clause. We do not find *148 this case to be controlling as far as the case at bar is concerned. There is one condition in the transfer from plaintiff-appellant to Cheramie that is absent in the cited case, which conveys "an undivided one-quarter (¼) interest in and to all the oil, gas, sulphur and other minerals on, in and under the following described land, situated in the Parish of St. Landry, State of Louisiana:" (Then follows a description of the 175 acre tract.) In the case at bar we have the additional condition after the interest in and to all the oil, gas, etc. "on, in and under the following described land, and that may be produced from the hereinafter described lands, * * *". Cormier v. Ferguson, supra, did not expressly consider and pass upon the effect of such a clause. We believe that our learned brother below was in error in his written opinion when he stated that the answer to the contention that the clause in question was found in the Cormier case and the cases cited therein, which involved the interpretation of a clause similar to the one above quoted, and the plaintiffs therein contended that such a clause indicated an intent to sell a royalty interest, which is the same contention advanced by the plaintiff in this case. The Court, 92 So.2d at page 511, held: (Emphasis added.)
"* * * As discussed extensively in Coyle v. North Central Texas Oil Co., 187 La. 238, 174 So. 274, undivided mineral interests are often purchased subject to a pre-existing lease when there is a prospect of development, the purchasers in effect becoming co-lessors by purchasing subject to the existing lease; and although the purchasers themselves may not intend to drill for oil themselves, they have the right to do so when such a lease granting the exclusive development privilege lapses. See also Standard Oil Co. of Louisiana v. Futral, 204 La. 215, 15 So.2d 65, involving mineral right with proviso similar to the present and sold subject to pre-existing lease. As the decision in Clark v. Tensas Delta Land Co., 172 La. 913, 136 So. 1, points out, the owner of an undivided one-half mineral right interest owns `not half of the right to the minerals, but the right to half of the minerals' under the land in question; and the landowner is `obliged, to permit' such mineral right owner `to go upon the land and explore for oil, gas, and other minerals, and to reduce them to possession, and account to the owner of the land for half of such oil, gas, or other minerals,' 136 So. 2."
At the beginning of the quote the Court stated, "This argument is not persuasive." Then followed the quotation citing the Coyle case. However, the argument referred to is shown in the paragraph just preceding it in which the court stated that the "plaintiffs argue that the lease held by the Gulf Refining Company pre-existing the 1926 grant of interest in minerals herein, giving Gulf the exclusive right upon the same land to explore for and extract minerals, excludes a similar grant to defendant's assignor by the 1926 instrument and indicates that said instrument merely intended to convey a right to a share of production, that is, a royalty interest."
Where the Cormier case is applicable, however, is in the statement conceding that the instrument under consideration in that case which created the interest litigated was ambiguous and that extraneous testimony was admissible to prove the intent of the parties, and the Court found that the plaintiff's "failure for eleven years prior to this 1949 suit to protest payment to the defendant for a share in the mineral production pursuant to a division order dated May 1, 1938, executed by both plaintiffs and defendant, which division order recognized defendant's right to receive a 1/32nd of (i. e., ¼th of the lease rental royalties from) the oil produced from the tract" was far more persuasive than plaintiff's testimony at the trial in 1950 as to his remembered intent of 1926 to sell merely a royalty right. Furthermore, we believe the statement of the Court in the Cormier case is most applicable to these kind of cases and we quote:
*149 "LSA-Civil Code, Articles 1949 and 1956 provide that the intention of the parties to ambiguous contracts may be construed according to the practical construction placed upon the contract by the parties themselves, such as by the manner the parties have executed the provisions of the contract, or by reference to other contracts either previous or subsequent to the ambiguous contract in questionbetween the same parties on the same subject. Texas Co. v. McDonald, 228 La. 353, 82 So.2d 37; Brown v. Sugar Creek Syndicate, 195 La. 865, 197 So. 583; Breard v. Pyramid Oil & Gas Co., 191 La. 420, 185 So. 303. (The Brown case concerns a division order executed by all parties providing for payments to be made to the owners of allegedly lapsed mineral and royalty interests; the joint execution of the division order and of the extension of the lease were held, inter alia, to have recognized the validity of the allegedly lapsed interests, citing Article 1956, 197 So. 591, Syllabus 7-8.)"
Conceding that the act in question is ambiguous, the extraneous testimony together with the comparison of other acts and the caption of "SALE OF ROYALTY", the check in payment "FOR ROYALTY", the instrument or sale from plaintiff-appellant to Cheramie conveyed only a royalty interest and it follows that the deed from Cheramie to Robichaux of whatever right he acquired from plaintiff-appellant is limited to a royalty interest.
Counsel for defendant-appellee argues that the latter was an innocent third purchaser, however, he readily testified that he had read the act in question from plaintiff-appellant to Cheramie, was familiar with it, had a copy of it in his hand when he prepared his deed from Cheramie, knew that it was captioned "SALE OF ROYALTY" and that it was recorded in the conveyance records of Lafourche Parish and he had read it on the records. Under these facts, defendant-appellee was put on notice and was not an innocent purchaser.
In view of our holding, we see no need to take up the alternative prayer for reformation of the deed on the ground of error.
For the above and foregoing reasons the judgment of the District Court is annulled, set aside and reversed and it is now declared and decreed that the deed from Arthur Melancon to Dolty (Dolte) Cheramie dated September 20th, 1951 is a royalty deed and transferred 1/16th of 1/8th or 1/128th royalty interest, and that the sale by Dolty (Dolte) Cheramie to Dave J. Robichaux dated July 6, 1953, duly recorded in the records of the Parish of Lafourche, State of Louisiana, Conveyance Book 172, folio 216, under Entry No. 113936, is decreed and declared to only convey a royalty interest, viz., 1/16th of 1/8th or 1/128th royalty interest of the oil, gas, sulphur and other minerals, in and under and that may be produced from the following described land, situated in the Parish of Lafourche, Louisiana:
"A certain tract of land situated in the Parish of Lafourche, State of Louisiana, on the left bank of Bayou Lafourche, at about twenty-seven (27) miles below the City of Thibodeaux, and measuring two (2) arpents front, more or less, by forty (40) arpents in depth, together with the proportional opening of the tract of which this is a part and known as the Trahant tract; bounded above by land of Josephine Boudreaux, wife of James McEvers, now or formerly, and below by land of Camille Boudreaux, now or formerly."
Judgment reversed.