LGAIDRY, J.
We are called upon in this appeal to determine the issue of whether the Louisiana Commissioner of Conservation (the Commissioner),[1] who directs the Office of Conservation of the state Department of Natural Resources, has the inherent authority to remove a previously designated operator of a drilling or production unit and to designate a new operator in the exercise of its statutory mandate to prevent waste of the state’s mineral resources. After review of the evidence and consideration of the parties’ contentions, we fully agree with the observation of the Commissioner stated in his brief that “[t]he actions of the trial court provide a textbook case in how the courts should conduct a judicial review of the Commissioner’s orders.” We further adopt our Factual and Procedural Background and Law and Discussion from the trial court’s written reasons for judgment, as set forth below with slight modifications and additions, and affirm the judgment of the trial court.
FACTUAL AND PROCEDURAL BACKGROUND
By Order No. 1074-B-l, effective February 14, 1989, the Commissioner of Conservation created a pattern of drilling and production units for the exploration and production of gas and condensate from an underground pool known as the Cotton Valley Formation, Reservoir A, in the McKenzie Field, Claiborne Parish, Louisiana. Two of these units were designated as CV RA SUJ and CV RA SUK.
The Order also designated Reynolds Drilling Company, Inc., as unit operator for CV RA SUK, and the King No. 1 Well as the unit well for this unit. Later in 1989, Reynolds was named unit operator of the King No. 2|aWell for CV RA SUJ. In April 1993, the unit operator of CV RA SUK and CV RA SUJ, and of the King Nos. 1 and 2 was changed to Whiting Petroleum Corporation pursuant to amended drilling permits issued by the Commissioner. At this time, the King Nos. 1 and 2 were producing gas and *537 condensate from the Cotton Valley Formation, Reservoir A. Thereafter, both the King Nos. 1 and 2 ceased producing, and in November 1999 the wells, and the interests in oil and gas leases covering acreage within CV RA SUJ and CV RA SUK, were put up for sale by auction.
In connection with this auction, potential bidders were furnished property data sheets, which detailed the status of the wells and leases. The property data sheets provided that: (a) neither well was then producing; and (b) both wells were shown as being “Shut in — Evaluate to P & A” (the term P & A is an abbreviation for plug and abandon). Further, the data sheets contained the following caution with respect to each well:
NOTE! THESE LEASES IN THIS UNIT MAY BE EXPIRED DUE TO EXTENDED CESSATION OF PRODUCTION. BUYER WILL ASSUME PLUGGING OBLIGATIONS. BUYER SHOULD ATTRIBUTE NO VALUE TO THIS WELL.
EnerQuest Oil & Gas, LLC (EnerQuest) was the successful bidder at the auction and an assignment was subsequently delivered to EnerQuest covering the properties being offered for sale, including the King Nos. 1 and 2. Thereafter, effective November 1, 1999, EnerQuest was designated by the Commissioner as the operator of units CV RA SUK and CV RA SUJ, and the King Nos. 1 and 2.
Because the King Nos. 1 and 2 had not produced for a significant period of time, certain of the mineral leases assigned to EnerQuest covering acreage within CV RA SUJ and CV RA SUK expired according to their terms; and in March and May 2000, EnerQuest executed instruments | ¿releasing the leases. Will-Drill Resources, Inc. (Will-Drill) and Johnson Energy Resources, L.L.C. (Johnson Energy) acquired new leases covering the lands within CV RA SUJ and CV RA SUK. Thereafter, the leasehold positions for the CV RA SUJ were as follows: Will-Drill 87.85%; Johnson Energy .77%; Ener-Quest 6.25%; unleased mineral interests 5.18%. The leasehold positions in the CV RA SUK were as follows: Will-Drill 63.58%; Johnson Energy 35.98%; Ener-Quest .49%.
In June 2000, the Office of Conservation issued work permits to EnerQuest for the two wells in Sand Units K and J. However, no operations were conducted after the work permits were issued. Thereafter, Will-Drill requested the Commissioner to administratively designate Will-Drill as operator of the King Nos. 1 and 2, and the units CV RA SUK and CV RA SUJ, so it could make attempts to restore the wells in the Cotton Valley Formation. Will-Drill’s request for administrative approval of an operator change was opposed by EnerQuest; therefore, pursuant to Office of Conservation policy, Will-Drill requested a public hearing to consider its request to be designated as operator of the wells and units.
The Commissioner made the following findings:
[[Image here]]
(6) That the evidence indicates that there is no dispute over the fact that Will-Drill Production Co., Inc. is currently the majority working interest owner in the unit designated CV RA SUJ and in the unit designated CV RA SUK.
(7) That the evidence indicates that the wells... hereof would be capable of producing hydrocarbons in commercial quantities from the Cotton Valley Formation, Reservoir A, if reworking operations were to be performed on such wells; and *538 that, therefore, the plugging of such wells would constitute waste.
(8) That Will-Drill Production Co., Inc. is prepared to proceed with reworking operations on the wells ....
| k(9) That EnerQuest Oil & Gas, L.L.C. did not present any evidence or make any assertion that it intends to place the wells... hereof back in production, and therefore, if the present application were denied EnerQuest Oil & Gas, L.L.C., would immediately be required to plug and abandon the wells; however, this would result in the other owners being deprived of the correlative rights, including the opportunity to recover their just and equitable share of the oil and gas without unnecessary expense.
(10) That in view of these findings, and the evidence in the record of the hearing held herein, it would be reasonable and in the interest of conservation, by preventing waste and the drilling of unnecessary wells, to designate Will-Drill Production Co., Inc., as operator of record of the wells .... [2]
Pursuant to these findings, the Commissioner ordered:
(1) Will-Drill Production Co., Inc. is hereby designated operator of record of the CV RA SUJ; King No. 2 (SN 210817) and of the CV RA SUK; King No. 1 (SN 208486), in the McKenzie Field, Claiborne Parish, Louisiana.
(2) Nothing herein shall be deemed to impair or alter any contractual rights between any party or parties, including any claim for damages and/or compensation.[3]
EnerQuest filed a petition for judicial review on April 27, 2001. Will-Drill intervened in the proceedings in support of the Commissioner’s Order. The hearing of the matter was held on October 22, 2001. The trial court’s judgment affirming the Commissioner’s Order was signed on November 1, 2001. The trial court issued its written reasons for judgment on December 5, 2001. EnerQuest thereupon instituted this appeal.
ASSIGNMENTS OF ERROR
EnerQuest contends the trial court erred in concluding that the Commissioner acted within his constitutional and statutory authority in issuing the Order at issue, removing it as operator of the involved units and wells, and further committed manifest error in affirming the Commissioner’s order, which was based upon speculative “economic” opinion testimony.
| ^STANDARD OF REVIEW
The standard for judicial review of an order of the Commissioner is set forth in detail in La. R.S. 30:12(B). Generally, the decision of the Commissioner embodied in such an order may be reversed only if the decision prejudices substantial rights because it violates constitutional or statutory law; exceeds the Office of Conservation’s statutory authority; is made upon lawful procedure; involves other legal error; involves an arbitrary or capricious abuse of discretion; or is manifestly erroneous based on the record of the Commissioner’s hearing.
The Commissioner’s findings of fact are entitled to great weight by a reviewing court and, unless manifestly erroneous or clearly wrong, should not be reversed. Save Ourselves, Inc. v. Louisiana *539 Environmental Control Comm., 452 So.2d 1152, 1158 (La.1984). Furthermore, in reviewing the conclusions and exercises of agency discretion by the Commissioner, the reviewing court must apply the arbitrariness test, and the party challenging the Commissioner’s decision must make a clear showing that the administrative action was arbitrary and capricious. Id. at 1160.
LAW AND DISCUSSION
The central issue here is whether, under the particular facts of this case, the Commissioner of Conservation can issue an order removing and replacing an existing unit operator.
Pursuant to the Conservation Act, the Commissioner has jurisdiction and authority over all persons and property necessary to enforce effectively the provisions of the Conservation Law and all other laws relating to the conservation of oil and gas. La. R.S. 30:4(A). The Commissioner has the authority to make any reasonable rule, regulation and/or order that is necessary to properly administer and enforce the Conservation Law. La. R.S. 30:4(C). Amoco Production Company v. Thompson, 516 So.2d 376, 383 (La.App. 1st Cir.1987), writs denied, 520 So.2d 118 (La.1988). Louisiana Revised Statutes 30:4(B) further provides that “[t]he commissioner shall make such inquiries as he thinks proper to determine whether or not waste, over which he has jurisdiction, exists or is imminent. In the exercise of this power the commissioner has the authority to collect data; to make investigations and inspections; to examine properties, leases, papers, books, and records ... and to take any action as reasonably appears to him to be necessary to enforce this Chapter.”
Furthermore, the Supreme Court noted in Hunt Oil Co. v. Batchelor, 93-3144, p. 6 (La.10/17/94), 644 So.2d 191, 196, that “the commissioner has the power to establish compulsory units and designate unit operators therefor. La. R.S. 30:9(B) and 30:10(A).” The First Circuit, in Amoco, stated that “a unit operator is designated to drill and produce the unit well. The Order establishing the compulsory unit deprives all of the owners in the unit, except the unit operator, of the right to explore for minerals and reduce them to possession. In this context, the unit operator has become the managing owner for the purposes of exploration and production,” Amoco, 516 So.2d at 392.
At the hearing, Will-Drill maintained that: it was the majority leasehold owner in the units; the two wells were currently off production; the current owner, Ener-Quest, has made no attempt to restore the wells to production; and it is prepared to restore the wells to production, and therefore, would like to be designated as operator of the two units.
Will-Drill submitted documentary and testimonial evidence to the Commissioner which purported to demonstrate that (1) Will-Drill’s leasehold interest in Sand Unit K is 87.85%, and 63.53% in Sand Unit J; (2) |sEnérQuest became operator of the wells in November 1999; (3) EnerQuest has not conducted any production from the wells since it became operator; (4) a consulting petroleum engineer for Will-Drill testified that Will-Drill is prepared to conduct operations if designated operator of the units; (5) the estimated recoverable reserves from the King No. 1 Well was $498,000.00, to drill a new well to recover these reserves would cost an estimated $750,000.00, and to rework the well to recover such reserves would cost approximately $175,000.00; and (6) the value of estimated recoveiable reserves from the King No. 2 Well was $447,300.00, the estimated cost to drill a new well to recover these reserves was $750,000.00, and the *540 estimated cost to rework the well was $187,000.00. EnerQuest did not present any evidence to refute Will-Drill’s assertion that it was the current majority leasehold owner, nor did it present any evidence to contest Will-Drill’s assertion that production could be reestablished if the wells were reworked.
Upon its review of the record, the trial court found that it contained substantial evidence to support the Commissioner’s findings of fact. Furthermore, Order No. 1074-1, designating Will-Drill as operator of record, was not arbitrary and capricious. Therefore, and for the reasons it expressed below, the trial court affirmed the Commissioner’s order.
EnerQuest argues that the Commissioner did not have the authority to determine the validity of the mineral leases. However, the record indicates that the Commissioner merely took into consideration which party had a majority interest in the two units—he did not make a determination as to who had good and merchantable title to the property as plaintiff suggests. It is realistic to assume that the party with a 63.53% interest in one unit, and 87.85% in another, would have more incentive than a party with only a .49% laworking interest in one, and a 6.25% working interest in another to rework the wells. The fact that the Commissioner considered the leases as a factor in making his determination is of no consequence.
EnerQuest argues that the Commissioner went beyond his statutory authority by considering the “rework” of an existing well. Plaintiff argues that the word “rework” is absent from the language in La. R.S. 30:4, 30:9, and 30:10. Louisiana Revised Statutes 30:9 specifically deals with the establishment of drilling units. Louisiana Revised Statutes 30:10 relates to drilling unit agreements and pooling orders. EnerQuest contends that the statutes are limited to the drilling of new wells, as opposed to existing wells.
The argument is misplaced. The Commissioner’s authority in the instant matter is derived from La. R.S. 30:4. The Commissioner is charged with the duty of preventing waste. The fact that reserves were capable of being recovered if the wells were reworked was a finding by the Commissioner that highlighted the wells’ potential of becoming waste if EnerQuest was not removed as operator of the wells. Reworking the existing wells presented a viable means of rescuing the wells from being plugged, which in turn would require the drilling of new wells—the end result being higher, unnecessary costs for the other interested owners. The evidence regarding the reworking of the wells presented an economically prudent option of resurrecting the wells to a producing status.
EnerQuest further argues that “waste,” as defined by the Conservation Act, is limited to “the waste of reservoir energy.” It asserts that the plugging of wells does not constitute “waste.”
Louisiana Revised Statutes 30:3(1) defines “waste” as follows:
(1) “Waste”, in addition to its ordinary meaning, means “physical waste” as that term is generally understood in the oil and gas industry. It includes:
|in(a) the inefficient, excessive, or improper use or dissipation of reservoir energy; and the location, spacing, drilling, equipping, operating, or producing of an oil or gas well in a manner which results, or tends to result, in reducing the quantity of oil or gas ultimately recoverable from a pool; and
*541 (b) the inefficient storing of oil; the producing of oil or gas from a pool in excess of transportation or marketing facilities or of reasonable market demand; and the locating, spacing, drilling, equipping, operating, or producing of an oil or gas well in a manner causing, or tending to cause, unnecessary or excessive surface loss or destruction of oil or gas.
Clearly, the definition, in its ordinary meaning, encompasses the instant situation. EnerQuest was an operator who was not operating, which in turn is wasteful to the other interested owners who are not recovering anything from a well that has the potential to produce recoverable reserves if reworked.
Louisiana Revised Statutes 30:10(A)(l)(a) provides the mandatory terms and conditions of all pooling orders. The statute states that they “shall be upon terms and conditions that are just and reasonable and that will afford the owner of each tract the opportunity to recover or receive his just and equitable share of the oil and gas in the pool "without unnecessary expense.”
We agree with the Commissioner’s contention that subsequent orders should follow the same principle. In the instant matter, the owners in the unit would be deprived of their “just and equitable share” if the wells were plugged, which in turn would require the drilling of new wells, which would result in “unnecessary expense.”
In brief, plaintiff contends that there is no law requiring that unproductive wells be plugged, however, plaintiff is mistaken. Louisiana Revised Statutes 30:4(C)(l)(a)(iv) provides that the Commissioner has authority to make rules and regulations:
InTo require the plugging of each dry and abandoned well and the closure of associated pits, the removal of equipment, structures, and trash, and to otherwise require a general site cleanup of such dry and abandoned wells.
At the hearing on December 5, 2001, the Commissioner was informed of the true nature of the wells. The King No. 1 Well had been off production since October 1997, and the King No. 2 Well had been off production since February 1999. Additionally, EnerQuest did not appear to have any intentions of conducting production operations on the two wells. As a result of the uncontroverted facts being presented to the Commissioner, he clearly had the authority to order the plugging of the wells.
EnerQuest argues, in its brief, that the Commissioner’s reliance on the testimony of Will-Drill’s expert witness, Mr. McGin-nis, is manifestly erroneous. In making his findings, Mr. McGinnis relied on public records from the Office of Conservation. Counsel for EnerQuest attempted to discredit the findings of Mr. McGinnis on cross-examination by revealing that Mr. McGinnis had never visited the site, did not include the cost to purchase the wells in his calculations, and he was not very familiar with the operational characteristics of the site. EnerQuest argues that it is not attacking the credibility of Mr. McGinnis, but rather what he stated regarding the economic success of the rework; however, the questions posed by counsel for EnerQuest appear to only question Mr. McGinnis’s credibility. En-erQuest did not present any evidence to contradict the economic calculations of Mr. McGinnis.
Lastly, plaintiff argues that the Commissioner effectively expropriated the well-bores and casing when it designated Will-Drill as operator. However, the Commis *542 sioner merely granted Will-Drill the right to operate the wells. The district court of proper venue and jurisdiction is the | ^appropriate authority to determine the ownership issues in relation to the well-bores and casing.
CONCLUSION
Louisiana Revised Statutes 30:9 gives the Commissioner the authority to designate unit operators. Accordingly, the trial court found that the Commissioner’s decision to remove EnerQuest as operator and designate Will-Drill as operator was fully supported by the record, and was a reasonable exercise of his authority. We agree. The authority and responsibility for conserving Louisiana’s oil and gas resources are virtually entirely vested in the office of the Commissioner of Conservation. Hunt Oil Company v. Batchelor, 93-3144 at p. 6, 644 So.2d at 197. Such authority and responsibility logically and necessarily must extend to the not uncommon practice of reworking of existing wells, if the Commissioner is to effectively fulfill his primary duty to prevent waste of our state’s mineral resources.
As to EnerQuest’s argument that the Commissioner’s Order amounts to an unconstitutional taking of its property “right of use” of its wellbores and casing, we additionally note that our law is replete with examples of reasonable restrictions on the right of use of owners of property, where such use might deprive or inhibit other persons in the exercise of their rights, or adversely affect the public interest. See, e.g., La. C.C. art. 667; La. R.S. 30:32(B). See also Nunez v. Wainoco Oil & Gas Company, 488 So.2d 955 (La.1986). The Commissioner’s Order at issue here clearly does not violate EnerQuest’s right of due process relating to its property interest. Contractual relations and property rights of persons must yield to a proper exercise of the police power, and it is on this principle that oil and gas conservation laws are constitutionally valid. Smith v. Holt, 223 La. 821, 829—30, 67 So.2d 93, 95 (1953). As stated previously, however, the narrow issues of ownership and compensation relating to the wellbores and casing are not before us, and are for the district court with proper jurisdiction and venue. We address only the constitutional propriety of the Commissioner’s action. Accordingly, the trial court’s judgment is not manifestly erroneous.
DECREE
The trial court’s judgment is affirmed. All costs of this appeal are assessed to the plaintiff-appellant, EnerQuest Oil & Gas, LLC.
AFFIRMED.
KUHN, J., concurs.

. At the time the Order at issue was issued and when this action was instituted, the Hon-, orable Philip N. Asprodites was the Commissioner of Conservation. Shortly after the trial court’s judgment was signed, Mr. Asprodites left the Office of Conservation and the Honorable Felix J. Boudreaux was appointed as Commissioner.

. Order No. 1074-1, State of Louisiana, Office of Conservation, dated February 28, 2001.

. Id.